Gerry OSTROW, Appellant,

v.

Albert L. HIGGINS and Onita B. Higgins, Yukon Office Supply, Inc., and Fairbanks Title Agency, Appellees.

No. S–1004.

Supreme Court of Alaska.

July 18, 1986.

Barbara L. Schuhmann, Schaible, Staley, DeLisio & Cook, Inc., for appellees Albert L. Higgins and Onita B. Higgins.

Ronald E. Noel, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellee Yukon Office Supply, Inc.

James D. DeWitt, Fairbanks, for appellee Fairbanks Title Agency.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

This is an appeal from a trial court decision granting summary judgment in favor of Albert and Onita Higgins, Fairbanks Title Agency and Yukon Office Supply. Gerry Ostrow claims that property she purchased from the Higginses was unlawfully foreclosed at a deed of trust sale in 1983. We reject Ostrow's arguments and affirm the trial court decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1980, Gerry Ostrow purchased a commercial site near downtown Fairbanks from Albert and Onita Higgins. In connection with that purchase, Ostrow gave the Higginses a promissory note for $74,593.94 secured by a deed of trust. The note obligated Ostrow to make monthly payments to the Higginses and the deed of trust required Ostrow to maintain fire insurance on the property in an amount "not less than the unpaid balance of the aforesaid Promissory Note." Ostrow also assumed an outstanding debt to Arctic First Federal Savings & Loan Association totalling $31,-954.47.

The improvements on the property were destroyed by two fires in early 1981. All insurance proceeds, less a fee to an insurance recovery expert, were paid by Ostrow to the Higginses, as specified under the deed of trust. At the Higginses' option, the proceeds were applied to repay the debt to Arctic First Federal and to reduce the

Gail T. Voigtlander and Anthony Guerriero, Roberts & Shefelman, Anchorage, for appellant.

unpaid balance owed by Ostrow to approximately $33,000.

After October 1981, Ostrow ceased making monthly payments. In April 1982 Transamerica Title Insurance Co., the deed trustee who preceded Fairbanks Title Agency, recorded an amended Notice of Default and Election to Sell. The notice stated that Ostrow had breached her obligations under the note and deed by failing to make monthly payments and by not maintaining adequate fire insurance. The notice also declared that the property would be sold on August 9, 1982. Subsequently, the Higginses voluntarily postponed that sale date.

On August 5, 1982 Ostrow sued the Higginses and Transamerica for declaratory relief, an injunction and damages. Ostrow also moved for a temporary restraining order (TRO) and a preliminary injunction.

At the August 26 hearing, Judge James R. Blair granted a TRO barring foreclosure pending a determination of the preliminary injunction motion. The parties agreed at the hearing to record notice of foreclosure postponements in lieu of written notice.

Ostrow did not pursue her motion for a preliminary injunction for more than nine months. In a letter dated May 11, 1983, the Higginses informed Ostrow that they intended to foreclose on June 6, 1983. Ostrow's attorney then advised the Higginses that an outstanding injunction barred foreclosure. In response, the Higginses informed Ostrow that they considered the TRO expired and reaffirmed their intention to foreclose.

On June 1, the Higginses' counsel requested the substituted trustee, Fairbanks Title Agency, to record the Notice of Sale. This notice was never recorded.

On June 6, 1983 at 10:10 a.m. the property was sold to Yukon Office Supply for $29,500.

Two weeks after the foreclosure sale, Ostrow moved for a preliminary injunction. The trial court dismissed *Ostrow I* with prejudice on September 1, 1983. This was because Ostrow withdrew her motion after the Higginses opposed it as moot. The following day, Ostrow moved to amend her complaint to add Fairbanks Title Agency and Yukon Office Supply as defendants. A week later, she also moved for reconsideration of the court's dismissal order. The court denied both motions and Ostrow did not appeal.

The trial court awarded the Higginses $1,000 in attorney fees. Ostrow appealed that award. We affirmed the award in a Memorandum Opinion and Judgment issued February 6, 1985.

Ostrow filed this lawsuit in November 1983 claiming that the property was wrongfully sold and the sale was improperly conducted. The trial court granted summary judgment in favor of all defendants. The court ruled that Ostrow breached her obligations under the deed of trust by failing to maintain adequate fire insurance. It held that the sale was proper and that *Ostrow I* precluded all other matters raised in the subsequent suit.

## II. DISCUSSION

### A. Res Judicata

■ The Higginses and Fairbanks Title Agency argue that Ostrow is precluded from raising issues that she raised or could have raised in her first lawsuit. *See Calhoun v. Greening,* 636 P.2d 69, 72 (Alaska 1981). Despite the trial court's dismissal of *Ostrow I* with prejudice, we agree with Ostrow that the dismissal was based on mootness and did not adjudicate the merits.

Mootness is a jurisdictional issue which does not preclude a second action on the same claim if the justiciability problem can be overcome. *McCarney v. Ford Motor Co.,* 657 F.2d 230, 233 (8th Cir.1981) (citing 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4436, at 344 (1981)). Under Alaska Civil Rule 41(b), a dismissal for lack of jurisdiction is not an adjudication on the merits. *Blake v. Gilbert,* 702 P.2d 631, 635 (Alaska 1985).

Ostrow's first lawsuit for injunctive and declaratory relief became moot simply because the foreclosure sale had already oc-

curred. Thus, the trial court erroneously held that Ostrow could not now litigate whether she had breached her obligations and whether the TRO remained effective. However, any error was harmless.

## B. Default

■ Ostrow argues that the trial court improperly found that Ostrow breached her obligations under the deed of trust by failing to maintain adequate fire insurance.[1]

In connection with her motion for partial summary judgment, Ostrow filed an affidavit stating that the Higginses acquiesced to a fire insurance policy amount of $72,000. We agree with Ostrow that this affidavit does raise a genuine issue of material fact. *Totem Marine Tug & Barge, Inc. v. Alyeska Pipeline Service Co.*, 584 P.2d 15, 19–20 (Alaska 1978). However, we find an alternative basis on which to affirm the trial court. *Sisters of Providence in Washington, Inc. v. Municipality of Anchorage*, 672 P.2d 446, 448 n. 2 (Alaska 1983). Ostrow breached her obligation under the promissory note by failing to make monthly payments.

Undisputedly, Ostrow ceased making monthly payments after October 1981. She claims no default occurred since the endorsement of insurance proceeds over to the Higginses constituted prepayment on the promissory note through 1988. We disagree.

Ostrow's obligation to maintain fire insurance and deliver proceeds to the trust deed beneficiary was separate from her obligation to make monthly payments under the promissory note. Furthermore, the trust deed expressly gave the Higginses the option to apply the insurance proceeds to any indebtedness secured by the deed of trust. *Ostrow did not have the right or the option to declare the insurance proceeds as prepayment of monies due under the promissory note absent an express agreement from the Higginses to the contrary.* The record firmly establishes that Ostrow's unexcused failure to make any monthly payments after October 1981 breached her contractual obligations under the promissory note. The defendants deserved summary judgment as a matter of law.

## C. Temporary Restraining Order

Ostrow argues that the foreclosure sale was unlawful since the parties agreed to extend the TRO. Alternatively, she claims that the TRO had the effect of a valid preliminary injunction. We reject both theories.

Alaska Civil Rule 65(b)[2] states that a TRO expires by its own terms within 10 days unless the restrained party agrees to an extension and the reasons for the extension are entered of record. Alaska Civil Rule 52(a)[3] requires the court granting or denying an interlocutory injunction to set forth findings of fact and conclusions of law which constitute grounds for the court's action. Strict compliance with Civil Rules 52(a) and 65(d)[4] is required and a

1. Ostrow maintained a $72,000 fire insurance policy on the property. The deed of trust required the trustor to maintain insurance "in an amount not less than the unpaid balance of the aforesaid Promissory Note." The note was executed for $74,593 and the unpaid balance at the time of the fire was $72,732.15.

2. Alaska R.Civ.P. 65(b) reads in part:
   Every temporary restraining order granted without notice shall be endorsed with the date and hour of issuance; shall be filed forthwith in the clerk's office and entered of record; shall define the injury and state why it is irreparable and why the order was granted without notice; and shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is

extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the extension shall be entered of record.

3. Alaska R.Civ.P. 52(a) reads in part:
   [I]n granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action.

4. Alaska R.Civ.P. 65(d) reads:
   Form and Scope of Injunction or Restraining Order. Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and

procedurally defective injunction will be set aside. *Department of Fish & Game v. Pinnell,* 461 P.2d 429, 432 (Alaska 1969).

■ The Supreme Court, in interpreting an identical provision of the Federal Rules, stated:

Rule 65(b) provides that temporary restraining orders expire by their own terms within 10 days of their issuance. Where a court intends to supplant such an order with a preliminary injunction of unlimited duration pending a final decision on the merits or further order of the court, it should issue an order clearly saying so. And where it has not done so, a party against whom a temporary restraining order has issued may reasonably assume that the order has expired within the time limits imposed by Rule 65(b).

*Granny Goose Foods, Inc. v. Teamsters,* 415 U.S. 423, 444–45, 94 S.Ct. 1113, 1126–27, 39 L.Ed.2d 435, 453–54 (1974). We hold that Alaska Civil Rule 65(b) should be interpreted in the same way as the Supreme Court construed its Civil Rule 65(b) in *Granny Goose.*

At the August 26 hearing, Judge Blair issued a TRO pending a determination of Ostrow's motion for preliminary injunction. Ostrow argues that the TRO was, in effect, a preliminary injunction. This argument lacks merit. Judge Blair clearly stated:

I'll enter a temporary restraining order that prohibits the sale from proceeding until the motion for preliminary injunction has been fully—worked out.

The issuance of a preliminary injunction requires the trial court to enter findings of fact and conclusions of law pursuant to

Civil Rule 52(a).[5] *Miller v. Atkinson,* 365 P.2d 550, 552 (Alaska 1961). Neither was entered here.

■ Contrary to Ostrow's claims, the record contains no evidence of an express agreement between the parties to extend the TRO. Rather, the Higginses informed her one month prior to the sale that they had never consented to a TRO extension. Ostrow argues that the Higginses impliedly agreed to such an extension by their continued acceptance of the insurance payments and their failure to deny the continuing effect of the TRO. We reject these arguments. The Higginses were the sole beneficiaries of all insurance proceeds payable under the deed of trust and automatically deserved those proceeds. Also, a TRO automatically expires within 10 days under Civil Rule 65(b) and the party against whom it is served is under no obligation to take any further legal action to verify its expiration. Any extension of a TRO must be approved by the court. Finally, a party who initially obtains a TRO is not entitled to receive its benefits indefinitely by not proceeding to request a preliminary injunction hearing. 11 C. Wright and A. Miller, Federal Practice and Procedure § 2953 at 522 (1973).

The trial court properly found that the TRO expired by its own terms within 10 days and there was no valid preliminary injunction in effect at the time of the foreclosure sale.

### D. Re-notice

Ostrow argues that the foreclosure sale was procedurally defective because the

---

not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

**5.** Ostrow cites several cases in support of her contention that a TRO may convert into a preliminary injunction. These cases are distinguishable. In *In re Dist. No. 1—Pac. Coast Dist. Marine Engineers' Beneficial Ass'n.,* 723 F.2d 70,

75 (D.C.Cir.1983), the court suggested several controlling factors that should be examined in cases where it is truly difficult to discern whether equitable relief is a TRO or a preliminary injunction. We do not need to consider those factors since it is readily apparent that Judge Blair issued a TRO, not a preliminary injunction. *Stanley v. Superior Court of Santa Clara County,* 137 Cal.App.3d 357, 186 Cal.Rptr. 923 (1982) is inapplicable because the court there interpreted a California statute inapposite to the Alaska rules at issue.

statutory requirements for postponement of judicial foreclosure sales were not met. Specifically, she contends that a nonjudicial foreclosure sale cannot be postponed for more than 30 days without satisfying the re-notice requirements of AS 09.35.160(b). We must determine whether AS 09.35.-160(b)'s requirements apply to nonjudicial deed of trust foreclosure proceedings.

■ Alaska Statute 09.35.160(b) [6] establishes procedures for postponement of judicial foreclosure sales not held within 30 days from the original date set for foreclosure. We disagree with Ostrow that these re-notice procedures apply to nonjudicial deed of trust foreclosure proceedings.

Alaska Statute 34.20.080(e) expressly provides for postponement of a nonjudicial foreclosure sale:

(e) The trustee may postpone sale of all or any portion of the property by delivering to the person conducting the sale a written and signed request for the postponement to a stated date and hour. The person conducting the sale shall publicly announce the postponement to the stated date and hour at the time and place originally fixed for the sale. This procedure shall be followed in any succeeding postponement.

We do not read this section as requiring the trustee to follow AS 09.35.160(b)'s re-notice requirements. Rather, the legislative history of AS 34.20.080(e) supports a contrary interpretation.

Prior to 1966, the statutes governing deed of trust sales contained no postponement procedures. In 1966, the legislature added subsection (e) to AS 34.20.080. *See* ch. 19, § 1, SLA 1966. The House Judiciary Committee report on the bill stated: "Rather than to rely on the variance in deeds of trust as to postponement of sale, Committee Substitute for House Bill No. 108 sets out a uniform method of postponing the sale." 1966 House Journal 318. This statement suggests that even prior to the addition of subsection (e), the legislature never intended postponement procedures for sale on execution to apply to deed of trust sales. Instead, the legislature presumed that the trustee followed postponement notice requirements enunciated in the deed of trust itself.

Recently a California appellate court interpreted a power of sale statute similar to Alaska's. That court held that where trustees publicly declared the new time and place of the sale at each postponement, they fulfilled all statutory notice requirements. *United States Cold Storage of California v. Great Western Savings & Loan Association*, 165 Cal.App.3d 1214, 212 Cal.Rptr. 232, 240 (1985). The California court noted that the intent of the notice of sale statute was not to give actual notice, but only to give notice " 'reasonably calculated to inform those who may be affected by a foreclosure sale.' " *Cold Storage*, 212 Cal.Rptr. at 240 n. 8 (citation omitted). Potential bidders would have been notified of the actual sale date if they had bothered to attend each postponement announcement or had simply contacted the trustee. "While these methods do require effort on the part of the bidders which could be avoided simply by the giving of a new notice of sale, they are reasonable and valid methods of obtaining notice." *Id.* at 241.

At the August 26 hearing, Ostrow's attorney waived written postponement notice and alternatively requested recorded notice. Pursuant to AS 34.20.080(e)'s requirements, the Higginses publicly announced each postponement to a stated hour and date at the time and place originally fixed for the sale.[7] *Cf. Armille v. Lovett*, 100

---

**6.** AS 09.35.160(b) reads as follows:
   If for any reason the sale cannot be held at the time appointed or within 30 days from the original sale date in the case of real property, the officer who is to conduct the sale shall notify the parties or their attorneys and designate a future day for the sale and give notice in the manner provided in AS 09.35.140.

**7.** By only submitting an affidavit from her former attorney stating he did not know whether postponement procedures had been complied with, Ostrow failed to raise a genuine issue of material fact as to whether these announcements took place.

N.H. 203, 122 A.2d 265, 268 (1956) (notice lacking when sale was postponed to an unspecified date); *Holland v. Pendleton Mortgage Co.*, 61 Cal.App.2d 570, 143 P.2d 493, 495 (1943) (notice improper when actual sale occurred four months prior to noted final postponement date).

We find that the re-notice requirements of AS 09.35.160(b) do not apply to deed of trust sales. The trial court correctly found that the Higginses complied with requirements for postponement notice. AS 34.20.-080(e).

### E. Recording

The transcript of the TRO hearing indicates that the parties agreed to record notice of postponements and the record shows that no notice was ever recorded. We must determine whether the trial court correctly found that the failure to record constituted harmless error.

■ Ostrow argues that she was prejudiced by Fairbanks Title Agency's failure to record postponement notice because recordation would have given notice to potential bidders who may have outbid the actual purchaser. No statute requires recordation of postponement notice. *See* AS 34.20.080(e). Parties can by private agreement require additional notice. However, as here, where all parties necessary to the foreclosure action had actual notice in compliance with the statute, failure to receive recorded notice was not prejudicial error. Ostrow's contention that unknown parties may have outbid the actual purchaser if the postponement notice had been duly recorded is pure speculation and without merit.

We have previously declined to set aside foreclosure sales except in the most unusual circumstances. *McHugh v. Church*, 583 P.2d 210, 216 (Alaska 1978). Fairbanks Title Agency's failure to record notice of postponement does not warrant a set aside.

### F. Due Process

■ Ostrow argues that the trial court denied her due process by construing the statutes to allow postponement of nonjudicial foreclosure sales without re-notice.[8] We reject her constitutional argument. A valid constitutional challenge based on due process requires "state action and the deprivation of an individual interest of sufficient importance to warrant constitutional protection." *Nichols v. Eckert*, 504 P.2d 1359, 1362 (Alaska 1973).

Even assuming *arguendo* the presence of state action in Alaska's deed of trust statute, we conclude that Ostrow suffered no deprivation because both she and potential third party bidders received sufficient notice.[9] A construction of AS 34.20.080(e) as allowing sale by public declaration gives notice reasonably calculated to reach interested parties. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15, 70 S.Ct. 652, 657–58, 94 L.Ed. 865, 873 (1950); *Wickersham v. State, Commercial Fisheries Entry Commission*, 680 P.2d 1135, 1144 (Alaska 1984). Although failure to give new notice of the foreclosure sale may have reduced the likelihood of competitive bidding, it did not eliminate bidding or render the sale invalid. *Cold Storage*, 212 Cal.Rptr. at 241.

---

**8.** Specifically, Ostrow argues that insufficient notice eliminated competitive bidding and caused a forfeiture of the property.

**9.** Because we hold that Ostrow's claim does not give rise to a constitutional violation, we need not consider whether state action exists under Alaska's power of sale statute. However, we note that the vast majority of courts considering this precise issue have found there is no state action in nonjudicial foreclosure proceedings. *See Charmicor, Inc. v. Deaner*, 572 F.2d 694, 695–96 (9th Cir.1978); *Levine v. Stein*, 560 F.2d 1175, 1176 (4th Cir.1977), *cert. denied*, 434 U.S. 1046, 98 S.Ct. 891, 54 L.Ed.2d 797 (1978); *Nor-thrip v. Fed. Nat'l Mortgage Ass'n*, 527 F.2d 23, 25–29 (6th Cir.1975); *Barrera v. Security Building & Investment Corp.*, 519 F.2d 1166, 1169–1172 (5th Cir.1975); *Bryant v. Jefferson Fed. Sav. & Loan Ass'n*, 509 F.2d 511, 513–515 (D.C. Cir.1974); *Fitzgerald v. Cleland*, 498 F.Supp. 341, 346–48 (D.Me.1980), *vacated on other grounds*, 650 F.2d 360 (1st Cir.1981); *Dennison v. Jack*, 304 S.E.2d 300, 306–08 (W.Va.1983); *Garfinkle v. Superior Court*, 21 Cal.3d 268, 146 Cal.Rptr. 208, 213–16, 578 P.2d 925, 930–33 (1978), *appeal dismissed*, 439 U.S. 949, 99 S.Ct. 343, 58 L.Ed.2d 340 (1978).

Statutory requirements for postponement of nonjudicial foreclosure sales were duly followed. The parties to the foreclosure action and at least one third party bidder had actual knowledge of the final sale date. We hold that this constitutes sufficient notice to satisfy any due process requirements.[10]

The decision of the trial court is AFFIRMED.

10. Our decision renders moot all remaining issues raised by the parties.