**Sara L. JACKINSKY, and Timothy Jackinsky, Appellants,**

**v.**

**Edward JACKINSKY, Wade C. Jackinsky, Gary W. Jackinsky, Joann Jackinsky, Benjamin Jackinsky, and Mary S. Jackinsky, Appellees.**

**No. S–6081.**

Supreme Court of Alaska.

May 12, 1995.

---

Daniel Westerburg, Homer, for appellants.

Tucker S. Thompson, Soldotna, for appellees Mary S. Jackinsky, Joann Jackinsky, and Benjamin Jackinsky.

Michael Hough, Homer, for appellees Edward Jackinsky and Gary Jackinsky.

Robert Molloy, Kenai, Guardian Ad Litem for appellee Wade Jackinsky.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON, and EASTAUGH, JJ.

### ORDER *

IT IS ORDERED:

1. The question of whether or not the preliminary injunction, which was reinstated by order of Justice Compton on April 13, 1995, should be continued is REMANDED to the Superior Court. The preliminary injunction shall remain in effect pending the Superior Court's determination whether or not to continue the preliminary injunction.

2. The Superior Court may proceed with the hearing concerning the preliminary injunction before the expiration of the ten-day period for filing a petition for rehearing or before this court rules on any petition for rehearing which may be filed.

Entered by direction of the court at Anchorage, Alaska on May 12, 1995.

* The court's opinion deciding this appeal is issued today and is attached hereto.

*OPINION*

COMPTON, Justice.

## I. *INTRODUCTION*

Sara Jackinsky (Sara) and Timothy Jackinsky (Timothy) sought a declaration that certain shore fishery leases, issued in the individual names of Edward Jackinsky, Benjamin Jackinsky and Joann Jackinsky, be declared to be held in trust for the entire Jackinsky Family. Wade Jackinsky, Gary Jackinsky and Mary Jackinsky later joined the suit as defendants. Sara and Timothy assert that all of the parties are participants in a Family partnership, which holds the leases as assets. Sara and Timothy allege that the leases are held in trust as partnership assets by the titular leaseholders for the benefit of all of the Jackinskys who participated in the fishing partnership. The superior court dismissed Sara and Timothy's suit on a motion for summary judgment. The court reasoned that Sara and Timothy's suit was barred under the doctrine of res judicata, because the underlying claim in their suit is the same as, and transactionally related to, a claim extinguished by a stipulation to dismiss an earlier suit. We reverse and remand the case for a trial on the merits.

## II. *FACTS AND PROCEEDINGS*

### A. *Factual Background*

This dispute centers around eight setnet fishing sites located on the east side of Cook Inlet, near the mouth of the Kasilof River. Edward, his wife Wade, and their children, Gary, Joann, Mary Sue, Benjamin, Sara, and Timothy, have continuously fished these sites since 1950. However, the sites have been utilized by the Jackinsky family since 1936.

Prior to 1985 the Jackinsky setnet sites were fished without state shore fishery leases. To protect the sites from encroachment by non-family members, the Jackinskys had the sites surveyed. They submitted lease applications to the Department of Natural Resources (DNR) in 1984, pursuant to a shore lease program established by AS 38.05.082 and administered under 11 Alaska Administrative Code (AAC) Chapter 64. The leases were granted in late 1984. The Family had divided the sites into three separate lease areas. The three lease areas were registered in the names of three different family members.[1]

Sara and Timothy claim that the leases were placed in the names of particular family members because DNR refused to allow more than one name on each lease. They assert that the Family had attempted to put each lease in more than one person's name, but was prohibited from doing so by DNR. They further allege that the selection of whose names should go on the leases was largely arbitrary.[2]

In 1985, following an altercation with the Family, Timothy left Alaska. He offered to sell his lease and entry permit to the other Jackinskys for $125,000. He informed the Family that if they did not purchase the lease from him, he intended to sell it on the open market. The Jackinskys (Edward, Wade, Gary, Sara, Joann, Benjamin and Mary) filed suit against Timothy to enjoin him from selling the lease. They alleged that Timothy, by agreement, held his lease in trust for all the Jackinskys who participated in the fishing partnership. This suit was settled by an order entitled "Stipulation to Dismiss" entered by the superior court. The order included three provisions: (1) Edward and Wade agreed to pay Timothy $50,000 for his interest in certain real property; (2) Timothy retained all his right and title to limited entry setnet permit number S04H62232C; and (3) Timothy transferred to Joann the shore lease which was the subject of the complaint. The order suggests that no consideration was paid for the transfer of the lease to Joann.

---

1. Benjamin was issued shore fishery lease ADL No. 215070, Edward ADL No. 215071, and Timothy ADL No. 215072.

2. With the exception of Timothy's affidavit, the segments of the record cited by Sara and Timothy to support these allegations neither confirm nor deny them.

The parties appear to agree that until 1991 the Family fished the sites cooperatively, pooling their resources and labor. For example, the operation utilized a collective checking account entitled "E. Jackinsky Fish," from which joint business expenses were paid. Until 1991 those who received full shares of the profits, including non-leaseholders, took business deductions on their income tax returns for proportionate shares of the operation's business expenses for the year. The fishing equipment, including boats, gear, nets, and nearby real property, was used communally.

However, the parties disagree on whether the issuance of the leases to specified family members influenced the manner in which the Family fished the sites and divided the revenues. Sara and Timothy claim that the annual profit distributions in the years following the acquisition of the leases did not depend upon whose name appeared on the leases. They assert that profit distribution was determined by who worked on the sites. Conversely, the Family argues that the majority of profits were split between the named lease holders. They contend that although the factors determining profit distribution were numerous—who showed up in the spring before the season to get the sites ready, who worked during the season, and the effort each contributed—who held the permits was especially important in the apportionment of the revenues.

In 1991 Gary and Edward promulgated "Operational Guidelines" which, for the first time, limited the recipients of the net revenues to the three leaseholders. This distribution plan excluded Sara, which led her to file this suit.

### B. *Procedural Background*

On January 24, 1992, Sara and Timothy filed suit in superior court against their father, Edward, their incapacitated mother, Wade, and their four siblings, Gary, Joann, Benjamin and Mary. Sara and Timothy claimed an interest in (1) the shore lease sites held by Edward, Joann and Benjamin,

(2) their limited entry permits, and (3) associated real property and equipment. Sara and Timothy later abandoned their claims to the limited entry permits. They continue to claim interests in the shore fishery leases and the real property and equipment.

Sara and Timothy sought and were granted in part a preliminary injunction. The injunction prohibited the Family from conveying the various components of the setnet operation while the suit was pending. However, the superior court refused to require the Family to permit Sara and Timothy access to the sites during this time. The court held that Sara and Timothy had an adequate remedy at law because they could claim a share of the profits for any seasons lost as a result of the Operational Guidelines.

The court appointed a Guardian Ad Litem (GAL) for Wade. On March 13, 1993, the GAL filed a motion for summary judgment, which the rest of the Family joined. The GAL's principal argument was that under the doctrine of res judicata, the instant suit was barred by the stipulation to dismiss the 1985 suit against Timothy. Sara and Timothy filed a cross-motion for partial summary judgment requesting, among other things, a ruling in their favor on the res judicata issue. The parties disagree about the issues which were discharged in the 1985 suit.

The court granted the GAL's motion, ruling that Sara and Timothy's suit was barred under the doctrine of res judicata. In a clarifying order the superior court confirmed that its ruling encompassed all of the claims raised by Sara and Timothy in their amended complaint. Final judgment was entered. The court awarded partial attorneys' fees to the Family. Ordinarily under Alaska Civil Rule 82(b)(2), the Family would have been entitled to 20% of their actual attorneys' fees and expenses. However, they were awarded enhanced attorneys' fees under Rule 82(b)(3).[3] Sara and Timothy appeal both the grant of summary judgment and the award of enhanced attorneys' fees.

---

**3.** As a consequence, defendants Joann, Benjamin and Mary Sue were awarded $11,000, approximately 42% of their actual fees; Gary and Edward $5,000, approximately 52% of the actual fees; and Wade $6,000, approximately 41% of her actual expenses.

## III. DISCUSSION

### A. Standard of Review

■ "When reviewing a grant of summary judgment, the court must determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment on the law applicable to the established facts." *Wright v. State*, 824 P.2d 718, 720 (Alaska 1992). The court reviews *de novo* an order granting summary judgment. *Tongass Sport Fishing Ass'n v. State*, 866 P.2d 1314, 1317 n. 7 (Alaska 1994). This court may consider any argument ascertainable from the record, even if the superior court did not rule on it, when reviewing the summary judgment order. *See Wright*, 824 P.2d at 720; *Moore v. State*, 553 P.2d 8, 21 (Alaska 1976).

### B. The Superior Court Erred in Ruling That the Stipulation to Dismiss Filed in Earlier Litigation Between These Parties Bars the Current Action.

Neither the doctrine of res judicata nor the doctrine of collateral estoppel (claim preclusion) bars Sara and Timothy's suit. The superior court relied on *Tolstrup v. Miller*, 726 P.2d 1304 (Alaska 1986), to dismiss on summary judgment Sara and Timothy's suit, holding that it was barred by res judicata. We disagree.

■ Res judicata holds that a final judgment will bar any subsequent suit on the same claim or demand, between the same parties or their privies. *Tolstrup*, 726 P.2d at 1306; *Calhoun v. Greening*, 636 P.2d 69, 71–72 (Alaska 1981).[4] "A final judgment ex-tinguishes all claims 'with respect to all or any part of the transaction, or series of connected transactions' out of which the previous action arose." *Tolstrup*, 726 P.2d at 1306 (quoting Restatement (Second) of Judgments § 24 (1982)). Collateral estoppel or issue preclusion bars the relitigation of an issue where: (1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action; (2) the issue precluded from relitigation is identical to the issue decided in the first action; (3) the issue was resolved in the first action by a final judgment on the merits; and (4) the determination of the issue was essential to the final judgment. *Johnson v. Alaska State Dept. of Fish & Game*, 836 P.2d 896, 906 (Alaska 1991).

■ Sara and Timothy's suit is not barred by res judicata because the 1985 litigation did not declare their rights to the leases, nor determine any issues relevant to the present litigation. Similarly, collateral estoppel does not bar their suit because none of the issues raised in their suit were actually litigated or resolved in the 1985 suit.[5]

In the superior court the Family successfully argued that the stipulation to dismiss filed in the 1985 declaratory judgment suit barred litigation of the claims raised by Sara and Timothy in the instant suit. The superior court incorrectly applied res judicata to bar Sara and Timothy's suit. Although the claims which Sara and Timothy are asserting against the Family mirror the declarations sought by the Family in its 1985 suit against Timothy,[6] the stipulation to dismiss which

---

4. It is not disputed that all of the current parties were involved in the 1985 suit which ended in a stipulation to dismiss.

5. The other elements of these doctrines are not at issue. In *Tolstrup* this court held that a stipulation to dismiss claims with prejudice operates just as an adjudication on the merits for *res judicata* purposes. *Tolstrup*, 726 P.2d 1304, 1306 (Alaska 1986). This dismissal has the same res judicata effect as a final judgment after trial on the merits. *Id.* All of the parties to this suit were parties to the 1985 suit, and therefore, the party against whom issue preclusion is being asserted was a party to the initial suit.

6. In the 1985 suit the Family claimed that the lease which Timothy was threatening to sell was held by him in trust for the Family. "ADL No. 215072 was placed in the name of Timothy Edward Jackinsky with the express understanding and agreement that the lease was being held for the entire Jackinsky family." The requested relief was not limited to a declaration about only Timothy's permit. The complaint in the 1985 suit also alleged that "[t]here was an agreement amongst all of the Jackinskys that any family member whose name was on the shore fishery lease agreements would hold the lease as a trustee for the family and not for anyone's individual benefit."

Compare this with the instant case where Sara and Timothy allege that the leases were assigned to the titular leaseholder "with the express understanding and agreement that the leases were

concluded the 1985 suit only resolved the issue of Timothy's ownership of lease numbered 215072 by having him transfer the lease to his sister. It did not address whether Timothy held the lease in trust for the Family or whether his successor, Joann, would hold the lease in trust for the Family.

The 1985 action was brought to prevent the commission of a perceived threatened harm. Timothy was threatening to sell the shore fishery lease in his name to someone outside of the Family. The plaintiffs claimed that Timothy held the lease for the use of the Family as a trustee, and therefore, lacked the authority to sell it to the general public. They requested a two part declaration as relief: (1) that Timothy "be ordered to transfer" the lease to Joann; (2) that the lease "is held in trust for the Jackinsky family." However, the threatened wrong never became more than a threat as the case was settled and the lease was transferred to Joann.

Section 33 of the Restatement (Second) of Judgments expresses the rule governing the preclusive effect of an action designed to prevent the commission of a threatened wrong.

> A valid and final judgment in an action brought to declare rights or other legal relations of the parties is conclusive in a subsequent action between them as to the matters declared, and in accordance with the rules of issue preclusion, as to any issues actually litigated by them and determined in the action.

Restatement (Second) of Judgments § 33 (1982).

As noted, no declarations were made in the 1985 suit, as it was settled. The settlement prevented any issues from actually being litigated or determined. Section 27 of the Restatement (Second) of Judgments, cross-referenced by Section 33, provides that the determination of actually litigated issues will have preclusive effect in later litigation. It states:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

Restatement (Second) of Judgments § 27 (1982).

The commentary to this section of the Restatement indicates that an issue is actually litigated when it is raised and submitted for determination. *Id.* cmt. d. Although cases which are resolved by settlement or consent or confession of judgment do not involve actual litigation of an issue of fact or law, they can have claim preclusive effects.

> In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section does not apply with respect to any issue in a subsequent action. The judgment may be conclusive, however, with respect to one or more issues, if the parties have entered an agreement manifesting such an intention.

Restatement (Second) of Judgments § 27 cmt. e (1982). The stipulation to dismiss the 1985 suit did not manifest an the intent to resolve any of this issues presented by the present litigation. The only issues addressed by the stipulation to dismiss are Timothy's transference of his lease and his rights to certain property held by the Family. As there was neither a determination of any relevant issues nor a manifestation of intent to resolve any relevant issues, the 1985 case cannot bar the present action.

The Family cites a trio of cases for the proposition that declaratory judgment actions in which there was no "actual litigation of the issues" nonetheless may have res judicata effect. *See Dale v. Greater Anchorage Area Borough,* 439 P.2d 790 (Alaska 1968); *Jefferson v. Greater Anchorage Area Borough,* 451 P.2d 730 (Alaska 1969); *Jefferson v. Asplund,* 458 P.2d 995 (Alaska 1969) (*Jefferson II* ). In *Dale,* the plaintiff challenged an election conducted by the Borough on a

---

being held for the entire Jackinsky family." Their complaint goes on to allege that "[p]laintiffs believe that the leases in the names of Ed-

ward, Joann and Benjamin Jackinsky are held by them as trustees for the entire Jackinsky family."

number of grounds. The superior court dismissed her complaint on the grounds she had not complied with a Borough ordinance which required one seeking to challenge an election to file a notice of contest with the Borough Assembly. We affirmed holding:

> It is generally held that election contests are purely statutory and dependent upon statutory provisions for their conduct, and that the failure of a contestant to observe strict compliance with the statutory requirements is fatal to his right to have an election contested. The reason for this, as expressed by one court, is that public policy demands that election results have stability and finality.

*Dale,* 439 P.2d at 792 (citations omitted). In the second case, *Jefferson v. Greater Anchorage Area Borough,* Jefferson sought to challenge the same election. We held that Jefferson's claim, although it contained an allegation of illegality not present in the *Dale* complaint, was barred by the doctrine of res judicata and properly dismissed. *Jefferson,* 451 P.2d at 733. In reaching this conclusion, we noted that according to the Borough's clerk no one had filed a notice of election contest. *Id.* at 733, n. 10. In the third case, *Jefferson II,* Jefferson again attempted to challenge aspects of the same election, and again his complaint was dismissed on res judicata grounds. *Jefferson II,* 458 P.2d at 1001–1002.

Contrary to the Family's argument, these cases do not stand for the proposition that declaratory judgments have res judicata effect as to issues not actually litigated. What was litigated in the first case was the question of whether an election contestant had to file a notice of election contest before filing suit. In terms of the Restatement (Second) of Judgments sections 33 and 27, this was an actually litigated issue upon which it was appropriate to predicate issue preclusion in the second and third cases assuming the other requirements of res judicata were met. These cases therefore do not serve as precedent upon which to base an argument that res judicata can bar issues not previously litigated.

The superior court relied on *Tolstrup v. Miller,* 726 P.2d 1304 (Alaska 1986), to conclude that this case was barred by the doctrine of res judicata. However, *Tolstrup* is distinguishable. It involved a violation of the rule prohibiting splitting a cause of action. In *Tolstrup* the claim in the subsequent suit was "part of the same transaction" as the counterclaim in the prior suit which was extinguished by a settlement. *Id.* at 1307. By contrast, the controversy giving rise to the case at bar was not born until after the 1985 litigation was concluded. In 1985 there was no controversy surrounding the ownership of leases number 215070 and 215071. Although the 1985 suit sought declarations regarding the rights of all of the named leaseholders, under the plain language of AS 22.10.020, as interpreted by *Jefferson v. Asplund,* 458 P.2d 995 (Alaska 1969), the claim relating to Timothy's lease was the only actual controversy which could have been resolved in the stipulation to dismiss. Thus, the only resolvable controversy in the 1985 suit was whether Timothy could sell the shore lease, registered in his name, to someone outside the Family.

■ Res judicata does not act as a bar when the conduct giving rise to the later suit post-dates the conclusion of the first suit. Restatement (Second) of Judgments § 24 cmt. f (1982);[7] *See Pankratz v. State Dep't. of Highways,* 652 P.2d 68, 73–74 (Alaska 1982). All of the claims in the instant suit concern conduct which arose after the 1985 suit. First, Joann and Benjamin did not claim that the leases in their names were their own personal property until 1991. Second, Edward did not claim ownership until his answer to Sara and Timothy's complaint. Third, the transaction by which Joann allegedly violated the earlier settlement did not arise until after the 1985 suit.

■ Additionally, res judicata does not bar Sara and Timothy's suit because the doctrine

---

7. The Restatement provides:
   Change of Circumstances. Material operative facts occurring after the decision of an action with respect to the same subject matter may in themselves, or taken in conjunction with the antecedent facts, comprise a transaction which may be made the basis of a second action not precluded by the first.
   Restatement (Second) of Judgments § 24 cmt. f (1982).

does not apply where a party did not have a fair opportunity to litigate the matter at issue in the earlier suit. *Ferguson v. State, Dep't. of Corrections,* 816 P.2d 134, 138 (Alaska 1991). The declarations sought in the 1985 suit were not addressed by the stipulation to dismiss. Thus, the instant suit resembles a suit in which the issue raised in a later case is not barred because the issue was not addressed in an earlier case, since it was either moot or not ripe. *See Vertecs Corp. v. Reichhold Chems., Inc.,* 671 P.2d 1273, 1276 (Alaska 1983) (holding that the doctrine of res judicata did not apply where the superior court had refused, in an earlier suit, to consider certain issues which it believed were not ripe for adjudication); *Ostrow v. Higgins,* 722 P.2d 936, 938–39 (Alaska 1986) (holding that the fact that an earlier suit was dismissed as moot did not act as a bar to later suits generally concerning the transaction involved in the mooted suit).

### C.  *Attorneys' Fees*

Since we reverse the superior court's grant of summary judgment, the award of attorneys' fees must also be reversed.

## IV.  *CONCLUSION*

The superior court's dismissal of this suit based on the doctrine of res judicata is REVERSED and this case is REMANDED for a trial on its merits. The superior court's grant of attorneys' fees is also REVERSED pending a determination of a trial on the merits.