Fred V. ANGLETON, Robert Fulton, and Robert Summers, Individually and for the Use and Benefit of the Most Worshipful Grand Lodge of Alaska, F. & A.M., Inc., Appellants,

v.

Stephen L. COX and Leslie R. Little, Appellees.

No. S–12896.

Supreme Court of Alaska.

Sept. 3, 2010.

Joseph L. Kashi, Soldotna, for Appellants.

Phil N. Nash, Law Offices of Phil N. Nash, Kenai, for Appellees.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, and WINFREE, Justices.

## OPINION

CARPENETI, Justice.

### I. INTRODUCTION

Members of a fraternal organization brought suit against other members asserting claims for breach of a settlement agreement and a derivative action on behalf of the fraternal organization. The superior court dismissed the derivative suit and later granted summary judgment for defendants on the grounds that, because a previous contempt action raising the same claims was dismissed, the damages claims for breach of settlement were barred by res judicata. Because Alaska law does not recognize a derivative right of action for non-profit members, we affirm the superior court's dismissal of that claim. However, we conclude that the order on the contempt motion in the first action was not a judgment on the merits of plaintiffs' claims for damages and therefore the claims for damages for breach of the settlement agreement were not precluded by res judicata. The fact that the judgment in the contempt action did not reach the merits also prevents the application of issue preclusion, or collateral estoppel, to these claims. Accordingly, we remand for further proceedings.

## II. FACTS AND PROCEEDINGS

### A. Facts[1]

In November 2002 two of the appellants, Robert Fulton and Robert Summers, settled a previous suit against appellees Stephen L. Cox and Leslie R. Little and others. That suit concerned the suspension of several members of various Masonic lodges in Alaska, including Fulton and Summers. Cox was a leader of the Alaska Grand Lodge at the time. The final appellant, Fred Angleton, is a former Grand Master of the Alaska Masonic Lodge and advisor to Fulton and Summers and, though not a party to the first suit, was named in the settlement of that suit because the plaintiffs wished to protect him from any potential retaliation for his involvement in the dispute.

The parties reached a settlement at a judicial settlement conference on November 27, 2002, and Superior Court Judge Dan A. Hensley placed the terms of the agreement on the record orally. The settlement's essential terms were that, in exchange for dismissal of all claims, defendants would pay plaintiffs $10,000 cash within 30 days and immediately restore the plaintiffs to their status as Master Masons. Cox and Little would send letters to Masonic and related groups informing them of the reinstatement, and withdraw a 2002 Grand Master edict expelling Masons who file lawsuits; they would then seek a review and vote regarding the Grand Master's power to suspend and expel members. No Masonic charges would be brought against plaintiffs or any members who assisted the plaintiffs in the litigation "for any reason arising in connection on . . . or before the date of this settlement." No parties would speak in a disparaging way about any other parties at the Grand Lodge. Plaintiffs' counsel further stated

> this is meant to be, obviously, a summary claim in that any—assum[ing] the current resolution, any breach would be actionable only in the context of the settlement agreement for rectification of that breach and

would not invalidate the remainder of the agreement.

It was very important to the suspended members that the defendants' promises be effective immediately because they wished to attend annual elections at the Seward Masonic lodge six days later on December 3, 2002. However, Cox took the position that Fulton and Summers were not effectively reinstated until after a stipulation for dismissal was entered. Judge Hensley settled this dispute at a show cause hearing the afternoon of the election, ordering that defendants were bound to readmit the plaintiffs immediately.

Throughout December 2002 and January 2003, Cox and Little acted in ways that may have violated the settlement agreement. For example, they voided the December 3 election at which Fulton and Summers were voted into office. They decided that Fulton and Summers could not be reinstated until the entire membership of the Grand Lodge voted. Angleton was suspended in connection with his assistance to Fulton and Summers, and members were instructed to exclude Fulton and Summers from lodge membership-only functions, which included funerals of Fulton's friends.

On February 6, 2003, Summers, Fulton, and Angleton were reinstated by the newly elected Grand Master at the annual Grand Lodge meeting. In their annual report, Cox and Little discussed the litigation without using names, stating that the members who brought the suit failed their brethren and that the Masonry should be devoid of lawsuits. Little added that three members of the Grand Lodge "sought to set aside their obligations as Masons. The pain these actions have caused Masonry will, unfortunately, reach throughout the North American Continent and could perhaps even tear down the very fabric of Masonry by allowing the courts to interfere in our Grand Fraternity."

---

**1.** Although many facts are in dispute, for purposes of a summary judgment motion we assume the non-moving party's allegations of fact are true. *Mat–Su/Blackard/Stephan & Sons v. State,* 647 P.2d 1101, 1102 n. 1 (Alaska 1982). We have assumed the version of Angleton, Summers, and Fulton to be true here because the grant of the summary judgment motion to Cox and Little is the main issue on appeal.

## B. Proceedings

### 1. Final judgment and post-judgment contempt proceedings in the 2002 action

A second show cause hearing was held before Superior Court Judge Sharon Gleason on December 23, 2002. Fulton, Summers, and Angleton alleged continuing violations of the settlement agreement, including being barred from meetings at their home lodge. On January 7, 2003, Judge Gleason issued an enforcement order enjoining Cox, Little, and other named defendants from interfering with Fulton and Summer's attendance at events, from suspending them or anyone named in the settlement for events connected to the first suit, and from voiding the Seward Lodge elections at which plaintiffs had won elected positions. That same day, Judge Gleason also entered a final order memorializing the settlement terms and dismissing the first action.

Fulton and Summers again moved for a finding of contempt on January 13, alleging that Angleton had already suffered irreparable harm by not being allowed to attend a meeting at which he was to have been installed as an officer of a concordant organization and that he and plaintiffs would suffer further irreparable harm by being barred from a February Grand Lodge meeting. Fulton and Summers requested that the court "hold defendants Cox, Grand Lodge, and any other culpable persons in contempt, [and] provide appropriate relief ... that will compensate Plaintiffs ... for the costs, injuries and damages ... since Judge Hensley's November 27, 2002 order." The final hearing in the first case regarding this motion was held on March 4, 2003, before Judge Gleason.

At the March hearing, the parties agreed that the new leadership of the Lodge was now in compliance with the settlement agreement and that violations of the order had ceased in early February 2003, when the suspended members were officially reinstated by the newly elected Grand Master. The Lodge's counsel asserted that the compliance of the new leadership with the final order in the case "mooted everything." When asked if he agreed, plaintiffs' counsel Joseph Kashi stated that "the issue really devolves primarily to Mr. Cox in his capacity and to Mr. Little ... [t]here were a significant number of things that happened that I think it would be appropriate for this court to give some fair consideration to." He then stated that "ultimate compliance doesn't necessarily wash away the damages and problems that were caused prior to that point," and stated twice that a hearing would be "appropriate." However, he then said that there were sufficient affidavits and "a decision on the pleadings as to whether a hearing should go forward would be the appropriate course in any event." Finally, near the end of the hearing, he asked the court to review the affidavits because "there was some fairly significant and still irreparable and unrepaired injuries that occurred during that two month time when the Court orders were not obeyed."

On March 7, 2003, the superior court denied the contempt motion as moot. The order denying the contempt motion also denied Cox and Little's motion to enter a revised final order "[s]o as to eliminate any question as to the expiration of any party's right of appeal." The order is silent on any claims or issues of damages.

### 2. The 2004 action for breach of settlement agreement

In November 2004 Angleton, Fulton, and Summers (collectively Angleton) filed a new action against two of the defendants in the prior action, Cox and Little, (collectively Cox) for damages arising from breach of contract, intentional infliction of emotional distress, and other alleged torts based on the events between the November 2002 settlement conference and the March 2003 reinstatement. Cox moved to dismiss the action for failure to exhaust remedies within the Lodge, and to dismiss any counts seeking recovery in a derivative action on behalf of the Lodge. The court granted the motion on the derivative claims but denied it with respect to failure to exhaust, noting that Cox had "not pointed to any language in the Grand Lodge's by-laws that would preclude this action, which appears to be essentially related to the enforcement of a settlement agreement entered into in previous litigation." Cox then moved for summary judgment on

the grounds that the previous case was dismissed on March 7, 2003, the court entered a final order memorializing the settlement agreement, and all the disputed facts occurred before that date.[2] The superior court granted the motion for summary judgment on the grounds that its March 7, 2003, order "should be accorded res judicata effect" for any claims arising from events between the entry of the settlement agreement in November 2002 and the final order on March 7, 2003. The court noted that Angleton had made several requests for hearings on damages, but that the parties ultimately agreed that the court would instead decide the case on the pleadings. Further, Angleton could have appealed from the March 7, 2003, order because of the lack of a damages award or damages hearing, but did not do so. The March order became the final and binding decision regarding claims for events before that order.

The court allowed Angleton to file an amended complaint to clarify plaintiffs' claims for the period after the March order. The new amended complaint did not comply with the order and the court denied the motion to amend. The court dismissed the entire case with prejudice in September 2007. Angleton appeals.

## III. STANDARD OF REVIEW

■ We review summary judgment rulings de novo[3] and may affirm summary judgment on any basis appearing in the record.[4] A determination that a claim or issue is precluded is a question of law which we review de novo.[5]

2. In fact, the final order memorializing the settlement agreement was entered January 7, 2003, and some violations occurred shortly after that, but apparently ended by March 7, 2003, the date of the final order dismissing the contempt action.

3. *Olivit v. City & Borough of Juneau*, 171 P.3d 1137, 1142 (Alaska 2007).

4. *Martinez v. Ha*, 12 P.3d 1159, 1162 (Alaska 2000).

5. *Alaska Wildlife Alliance v. State*, 74 P.3d 201, 205 (Alaska 2003); *Maness v. Daily*, 184 P.3d 1, 5 (Alaska 2008).

6. *Ruckle v. Anchorage Sch. Dist.*, 85 P.3d 1030, 1034 (Alaska 2004).

■ We review denial of a motion to amend a complaint for abuse of discretion.[6]

## IV. DISCUSSION

### A. The March 7, 2003, Order Denying Angleton's Contempt Claims Was Not A Final Judgment On The Merits.

■ A judgment is given res judicata effect by this court when it is (1) a final judgment on the merits, (2) from a court of competent jurisdiction, (3) in a dispute between the same parties (or their privies) about the same cause of action.[7] The question of whether the cause of action is the same does not rest on the legal theory asserted but rather on whether the claims arise out of the same transaction-the same set of underlying facts.[8] Res judicata is also known as claim preclusion.[9]

■ Cox urges us to accord collateral estoppel effect to the March 7 order even if we find that res judicata does not apply. Collateral estoppel is also known as issue preclusion because it requires that a court has decisively adjudicated a particular factual or legal issue.[10] Like res judicata, collateral estoppel also requires that an issue be decided on the merits in order for further litigation to be precluded.[11] We first analyze whether the issues and claims in the second lawsuit were the same as in the first. We then analyze whether the order denying the motion for contempt as moot was a decision on the merits.

7. *Smith v.C.S.K. Auto, Inc.*, 132 P.3d 818, 820 (Alaska 2006).

8. *Alderman v. Iditarod Props.*, 104 P.3d 136, 141 (Alaska 2004).

9. *Alaska Pub. Int. Research Group v. State*, 167 P.3d 27, 44 (Alaska 2007).

10. *See Rooney v. Rooney*, 914 P.2d 212, 216 (Alaska 1996).

11. *Jackinsky v. Jackinsky*, 894 P.2d 650, 654 (Alaska 1995).

### 1. The issues and claims raised in the second lawsuit are the same as those raised in the motion for contempt.

■ Angleton argues that there was no identity of claims (for res judicata or claim preclusion purposes) nor identity of issues (for collateral estoppel or issue preclusion purposes). First, he makes the point that all of the disputed transactions occurred after final settlement of the first action became effective on November 27, 2002, and most occurred after the action was dismissed on December 3, 2002. He also argues that damages for the breach of the settlement agreement were not before the court "as such" in the contempt hearing held on March 4, 2003. Both of these points miss the mark. By filing a contempt motion in which he asked the court to consider damages, asking the court to hold a hearing on damages, and then accepting that the court could make that decision on the affidavits, Angleton clearly raised a claim for damages from the breach of the settlement agreement. Angleton even pointed to the same affidavits submitted with the contempt motion as his evidence in the second action on summary judgment that the plaintiffs suffered actual damages. Alaska Statute 09.50.040 authorizes, though it does not require, a trial court to award indemnification damages to a party harmed by a civil contempt.[12] The statute provides that where an indemnification award is made and accepted, the aggrieved party is barred from later claims for the same harm.[13] Therefore, Cox satisfies the elements of identity of claims and identity of issues.

### 2. The order denying the motion for contempt as moot was not a decision on the merits of Angleton's damages claims.

■ Although the claims and issues presented are the same claims and issues presented in the contempt action, the March 7, 2003, order will preclude later litigation under either res judicata or collateral estoppel principles only if it was a judgment on the merits.[14] Angleton argues that this could not have been a judgment on the merits under this court's rule in *Ostrow v. Higgins*[15] that a dismissal based on mootness is a jurisdictional ruling and not based on the merits. We agree with Angleton.

In *Ostrow* the superior court adjudicated a first lawsuit for an injunction against the sale of a property and damages.[16] After the plaintiff failed to pursue the injunction beyond the temporary stage, the defendant sold the property while the suit was pending.[17] The plaintiff then moved for the injunction but defendants argued mootness and the plaintiff withdrew the motion.[18] The superior court dismissed the entire suit at that point and Ostrow did not appeal.[19] Ostrow later brought a new lawsuit.[20] That new suit was dismissed on res judicata grounds.[21] We disagreed because "mootness is a jurisdictional issue which does not preclude a second action on the same claim if the justiciability problem can be overcome."[22]

*Ostrow* is applicable to this case whether the case is analyzed under res judicata or

---

**12.** AS 09.50.040 provides in relevant part:

> If a loss or injury to a party in an action or proceeding has been caused by the contempt, the court, in addition to the punishment imposed for the contempt, may give judgment in favor of the party aggrieved ... for a sum of money sufficient to indemnify that party and to satisfy the costs and disbursements of that party. The judgment and the acceptance of that amount is a bar to an action or proceeding by the aggrieved party for the loss or injury.

*See also Doyle v. Doyle*, 815 P.2d 366, 371–72 (Alaska 1991) (holding that trial court has discretion to award damages for contempt, but that damages must correlate with actual injury to party).

**13.** AS 09.50.040.

**14.** *Smith v. CSK Auto, Inc.*, 132 P.3d 818 (Alaska 2006); *Jackinsky*, 894 P.2d at 654.

**15.** 722 P.2d 936 (Alaska 1986).

**16.** *Id.* at 938.

**17.** *Id.*

**18.** *Id.*

**19.** *Id.*

**20.** *Id.*

**21.** *Id.*

**22.** *Id.* at 938–39 (concluding that any error was harmless).

collateral estoppel. Here, as in *Ostrow*, the claim presented was dismissed as moot without a ruling on a simultaneous damages claim; . in both cases the plaintiff did not appeal the failure to rule on damages in the first action. Under AS 09.50.040, the superior court had discretion to award damages "sufficient to indemnify" the plaintiffs for the harm caused by the contempt. However, the order makes no mention of a determination of that issue even though damages were requested in the motion for contempt and during the hearing.

▆▆▆▆ Whether to award damages in an action for contempt is within the discretion of the court.[23] Under AS 09.50.040, a court has discretion not to award any damages. However, in the absence of an explicit finding that no damages have been suffered, the fact that a court does not exercise its discretion to indemnify a party in a particular case is not equivalent to a substantive decision that the party is not entitled to damages. Damages in contempt actions often have different purposes than damages in other actions, which is why the decision to award damages is left to the sound discretion of the trial court.[24]

Here, we cannot conclude from the order that the court found that no damages could be shown. The court did allude during the hearing to affidavits presented by Fulton and Summers at the end of the contempt hearing and did ask Fulton's counsel whether the court could "solve those alleged harms." Fulton's counsel suggested that the affidavits would be sufficient to enable the court to make a decision on the damages. It is not clear that the evidence in the record shows

an entitlement to damages, but without an explicit statement in the order by the finder of fact regarding the substantive merits of the damages claims, dismissal based on res judicata was inappropriate.[25]

Because the court was not required to reach the merits of the damages question in the particular context of a contempt hearing, and did not address the merits of the damages claims, we conclude that this particular contempt order was not a judgment on the merits of the claims for damages.[26] We emphasize that the only reason the second action survives res judicata is that dismissal of the contempt motion was jurisdictional and thus there was no judgment on the merits. If the dismissal had been on the merits, including a dismissal based on summary judgment, res judicata would bar a subsequent action and the only relief available to the claimant would be an appeal of the dismissal.

### B. It Was Not Error To Take Judicial Notice Only Of The Record From The First Case And Decline To Take Judicial Notice Of 83 Facts Listed In Fulton's Motion.

▆▆▆ Angleton moved for partial summary judgment requesting the court to take judicial notice or to enter an order that 83 specific facts were established. The superior court noted in its decision on the record that it disagreed with many of the stated facts and that it had taken judicial notice of the record in the previous case. Angleton argues that the court "fail[ed] to make any cognizable findings when denying a motion that was basically ascertainable prima facie from the

---

**23.** *Doyle v. Doyle*, 815 P.2d 366, 371 (Alaska 1991) (noting that civil contempt damages are means for coercing future compliance, and have both remedial and punitive elements).

**24.** *Id.*

**25.** *Usibelli Coal Mine, Inc. v. State, Dep't of Natural Res.*, 921 P.2d 1134, 1142 (Alaska 1996) (holding where commissioner did not address argument in final decision, res judicata did not apply).

**26.** While we conclude that summary judgment should not have been granted on the basis of res judicata, we acknowledge that it is uncommon

for the same claim to be raised in the context of two separate lawsuits. The values served by the doctrines of res judicata and collateral estoppel include "society's overriding interest in reaching a final resolution in legal controversies," promoting efficiency and preserving resources within the judicial system, and allowing parties to rely on decisions by refusing to allow future litigation on a cause of action that has been decided. 50 C.J.S. *Judgments* § 931 (2009). In order to promote these values, we encourage parties who elect to litigate an alleged breach of a settlement agreement within the context of an existing lawsuit to resolve their claim within that lawsuit.

Court's own record" and further states that he will not argue each factual point individually because they are each "self-proving."

Judicial notice is appropriate if the fact is either (1) generally known within the state or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.[27] Facts and inferences about which reasonable minds could differ are not the proper subject of judicial notice.[28] The basis for the court's denial of most of the motion for partial summary judgment was clear: The court found the statements arguable or incorrect. We affirm the court's ruling on this issue.

### C. We Decline To Imply A Derivative Cause Of Action For Nonprofit Organization Members.

Judge Gleason dismissed Angleton's derivative claim because no such cause of action exists in Alaska's nonprofit corporation act. Angleton cites no case law directly supporting his arguments. Instead, he urges that the court should create such a cause of action because (1) AS 10.20.360 allows members to dissolve nonprofit corporations when directors are deadlocked, acting oppressively or illegally, or in other limited circumstances and (2) creating a derivative action relates to procedural rights and therefore is within the constitutional power of the courts.

We defer to the choices of the legislature in drafting the statutes governing corporations. The legislature specifically created a right of shareholders of for-profit corporations to pursue a derivative cause of action on behalf of the corporation against parties who commit a wrong against the corporation, but created no analogous right for members of a nonprofit corporation.[29] We are not persuaded by Angleton's argument that AS

10.20.360, which enables a member of a nonprofit corporation to sue for *dissolution* of the corporation in extreme circumstances,[30] somehow implies the creation of a right to pursue derivative suits.

### D. We Decline To Reach The Denial Of Angleton's Second Motion To Amend.

On February 7, 2007, following its grant of summary judgment to Cox, the court gave Angleton an opportunity to file an amended complaint "restricted to claims that arose after March [7], 2003." The court had already given instructions on this point. Angleton filed an amended complaint on February 28, 2007, but, as the court found, the "claims for relief in the proposed Second Amended Complaint are not restricted to claims that arose after March [7], 2003." Indeed, the only action that it alleged occurred after March 7, 2003, was the dissemination of the annual report in which Cox commented disapprovingly about members bringing lawsuits. Angleton argues that the binding and distribution of the comments was a separate breach of the agreement from the reading of the comments at the annual meeting. He also argues that it constituted "a continuing published libel." The superior court concluded that Angleton had not complied with its order concerning amendment of the complaint, denied the motion to amend, and afforded Angleton 20 days in which to amend the complaint in conformity with its earlier order. Angleton did not do so. Angleton now argues that the superior court abused its discretion in denying his motion to amend.

We decline to reach this issue. First, our reversal of the superior court's grant of sum-

---

27. Alaska R. Evid. 201(b).

28. *F.T. v. State*, 862 P.2d 857, 864 (Alaska 1993).

29. *See* AS 10.06.435.

30. AS 10.20.360 allows a member to sue in superior court to liquidate the assets and business of a nonprofit corporation when: (1) the directors are deadlocked in the management of the corporate affairs, the members are unable to break the deadlock, and irreparable injury to the corporation is being suffered or is threatened by reason

of the deadlock; (2) the acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent; (3) the members are deadlocked in voting power, and have failed, for a period which includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired or would have expired upon the election of their successors; or (4) the corporate assets are being misapplied or wasted.

mary judgment may moot this question as a practical matter, because Angleton will be able to litigate his principal claims on remand. Second, we note that the superior court denied the motion to amend in the context of its decision on summary judgment. Now that the summary judgment has been reversed, that court should be the first to address the propriety of the motion to amend, if indeed Angleton wishes to proceed with his amended complaint.[31]

## V. CONCLUSION

The order of March 7 that dismissed the contempt action as moot was not a final judgment on the merits as to damages. Therefore Angleton's subsequent damages claims are not precluded. Accordingly, we REMAND the case for further proceedings consistent with this opinion.

MATTHEWS, Justice, not participating.

---

**31.** Although an appellate court has the power to allow amendment of pleadings on remand, *see Haines Pipeline Const., Inc. v. Montana Power Co.*, 251 Mont. 422, 830 P.2d 1230, 1240 (1991) ("When an appellate court reverses and remands for new trial, the appellate court may, in furtherance of justice, grant leave to the parties to amend their pleadings.... Where issues are 'inextricably intertwined,' the pleadings may be amended on remand."), *overruled on other grounds by Porter v. Galarneau*, 911 P.2d 1143 (Mont.1996), we conclude that it is preferable to allow the superior court to address it initially, if indeed the issue is even raised below.