v.

STATE of Alaska, In the Matter of C.A. and V.A., Appellee.

R. A., A. A., Appellants,

v.

STATE of Alaska, DEPT. OF HEALTH AND SOCIAL SERVICES, Appellee.

Nos. 4687, 4870.

Supreme Court of Alaska.

Feb. 13, 1981.

John M. Holmes, Alaska Legal Services Corp., Barrow, for appellants.

Larry D. Wood and Douglas K. Mertz, Asst. Attys. Gen., Fairbanks, and Avrum M. Gross, Atty. Gen., Juneau, for appellees.

James D. DeWitt, Fairbanks, guardian ad litem.

## OPINION

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and CRASKE, Superior Court Judge.

CONNOR, Justice.

E. A., an Inupiat Eskimo, is the mother of C. A., age 6, and V. A., age 1. Since 1970, E. A. had frequent contact with the Department of Health and Social Services [DHSS] regarding the care and custody of her children. Beginning in 1978, E. A. had increasing problems with alcohol and her contacts with the DHSS became more frequent. On September 19, 1978, the DHSS took emergency custody of her children and placed them in the Barrow Receiving Home.

On November 22, 1978, the State filed the first of two petitions for termination of parental rights to C. A. and V. A. On December 28, 1978, prior to the commencement of any proceedings, E. A., the State, and the guardian ad litem entered into a stipulation whereby it was agreed that C. A. and V. A. should be adjudicated children in need of aid and committed to the custody of the DHSS for not longer than two years. The stipulation provided for the return of the children to E. A. after six months if she had fulfilled certain specified conditions, such as obtain a job, seek counseling and quit drinking.

The State filed its second petition for termination of parental rights on February 11, 1979. The superior court terminated E. A.'s parental rights to C. A. and V. A. on April 11, 1979 and ordered "that both of the children be placed in the custody of the [DHSS] for the purposes of adoption into a stable, loving family environment ... with adoptive parents of substantially the same or similar [ethnic] background." E. A. appeals from this decision.

The children were removed from the Barrow Receiving Home and placed with their prospective adoptive parents on May 17, 1979. Shortly thereafter, R. A. and A. A., the grandparents of C. A. and V. A., were informed by the DHSS that their grandchildren had been placed in an undisclosed location with undisclosed persons for the purpose of adoption. On June 8, 1979, the grandparents appealed to the superior court from the DHSS's adoptive placement of C. A. and V. A. and requested a hearing de novo pursuant to the Indian Child Welfare Act [1] and AS 47.10.230(e). The superior court dismissed the appeal for lack of jurisdiction. The grandparents now appeal to this court from the superior court's decision.[2]

E. A. and the grandparents have consolidated their appeals. The issues presented by each will be discussed separately.

I. *Termination of E. A.'s Parental Rights*

■ E. A. challenges the superior court's decision to terminate her parental rights to C. A. and V. A. In reviewing that decision we must apply the clearly erroneous standard. We will not disturb the court's findings regarding the termination of parental rights unless we are left with the definite and firm conviction that a mistake has been made. *In re S. D., Jr.*, 549 P.2d 1190, 1195 (Alaska 1976).

■ In order to terminate parental rights under AS 47.10.080(c)(3),[3] the court must find by clear and convincing evidence (1) that there is a child in need of aid under AS

1. 25 U.S.C. §§ 1901–1963 (Supp.1978).

2. On June 22, 1979, we denied E. A.'s motion to stay the execution of the placement of C. A. and V. A., but ordered a limited stay from instituting any adoptive proceedings pending this opinion.

3. AS 47.10.080(c)(3) provides:
   "(c) If the court finds that the minor is a child in need of aid, it shall

   .    .    .    .    .

   (3) by order, upon a showing in the adjudication by clear and convincing evidence that

there is a child in need of aid under AS 47.10.010(a)(2) as a result of parental conduct and upon a showing in the disposition by clear and convincing evidence that the parental conduct is likely to continue to exist if there is no termination of parental rights, terminate parental rights and responsibilities of one or both parents and commit the child to the department or to a legally appointed guardian of the person of the child, and the department or guardian shall report annually to the court on efforts being made to find a permanent placement for the child."

47.10.010(a)(2)[4] as a result of parental conduct, and (2) that the parental conduct is likely to continue. *In re C. L. T.*, 597 P.2d 518, 524–25 (Alaska 1979). In the present case the parties stipulated, with approval of the court, that C. A. and V. A. are children in need of aid. E. A. apparently does not challenge the validity of that stipulation or the factual basis of the court's finding that C. A. and V. A. are children in need of aid as a result of parental conduct. She does contend, however, that the court failed to make a clear finding that the parental conduct is likely to continue as required by AS 47.10.080(c)(3). We agree.

■ In its decision, the court discussed parental conduct at length and expressly found that E. A.'s conduct was such as to constitute abandonment of C. A. and V. A. It is not clear from the decision, however, whether the court made the additional requisite finding, based on clear and convincing evidence, that the parental conduct is likely to continue. In order to assure that the important right to the care, custody, and control of one's children is not permanently terminated absent strict compliance with the statutory requirements, we hold that this finding must be made expressly on the record prior to ordering the termination of parental rights. Thus, we remand to the superior court for determination on the record of whether there is clear and convincing evidence that the conduct of E. A. which led to this action is likely to continue if there is no termination of parental rights.

■ E. A. objects to the termination of her parental rights in three other respects. We will address these contentions briefly since they are likely to arise again on remand. First E. A. argues on the basis of AS 47.17.030(d) that the state had a mandatory duty to provide counseling and other support services to the family prior to seeking termination of parental rights. AS 47.-17.030(d) reads:

"(d) Before the department or a local government health or social service agency may seek the termination of parental rights, under AS 47.10.080(c)(3), it shall offer protective social services and pursue all other reasonable means of protecting the child."

E. A.'s reliance upon this statute is misplaced. The section is found in Chapter 17 which applies to cases of physical abuse and neglect of children, and is clearly intended to prevent further abuse by providing protective services *to the child.*

■ Before resorting to termination of parental rights, the state must still make reasonable attempts, whenever possible, to preserve and strengthen the family ties.[5] The record shows, however, that in the present case the DHSS fulfilled this obligation by offering counseling and supervision to E. A. on numerous occasions.

■ E. A.'s second contention is that the court erred in rejecting her recommended disposition. She proposed, as an alternative to termination of parental rights, that the state retain legal custody of the children for two years and that the children be placed with their grandparents in the meantime. Assuming that the court, on remand, makes a determination that there is clear and convincing evidence that the parental conduct is likely to continue, it is within the court's discretion to reject this proposal and terminate parental rights.

■ Finally, E. A. urges that she is entitled to a new adjudicatory hearing under the provisions of the new Indian Child Welfare Act, 25 U.S.C. §§ 1901–1963 (Supp. 1978) [the Act]. This Act provides a higher standard of protection to the rights of parents in termination proceedings involving Indians and Native Alaskans[6] than that

---

**4.** AS 47.10.010(a)(2) provides that a child may be adjudicated in need of aid as a result of, inter alia, physical abandonment or neglect on the part of the parents.

**5.** The purpose of Title 47 is "to preserve and strengthen the child's family ties whenever possible, removing him from the custody of his family only as a last resort . . . ." AS 47.05.-060.

**6.** 25 U.S.C. § 1903(3) (Supp.1978) defines "Indian" as "any person who is a member of an Indian Tribe, or who is an Alaska Native and a member of a Regional Corporation as defined in 1606 of title 43."

provided in AS 47.10.080(c)(3).[7] The provisions of the Act are not applicable, however, to termination proceedings conducted prior to the effective date of the Act.[8] E. A. acknowledges that the Act was not in effect at the time her parental rights were terminated, but contends that under our decision in *In re J. M.*, 573 P.2d 1376 (Alaska 1979), she is entitled to a new adjudicatory hearing whenever a statute with significantly stricter standards takes effect after the original adjudication, but during the pendency of the proceeding. This argument is based on an overly broad interpretation of our holding in *J. M. J. M.* held that children adjudged dependent under the old dependency statute prior to its repeal are entitled, on request, to a new hearing under the higher standards of the newly enacted dependency statute. This holding was based largely on the fact that the dependency statute was amended such that most of the guardian ad litem's constitutional objections to the old law, under which *J. M.* was adjudged dependent, were cured. Thus, in *J. M.* there was the possibility that the minor had been adjudged dependent under an unconstitutional statute. Here there has been no constitutional challenge to the statute under which E. A.'s parental rights were terminated. We see no basis for granting E. A. a new adjudication hearing under the standards of the Indian Child Welfare Act.[9]

## II. *The Grandparents Right to Appeal the Adoptive Placement of Their Grandchildren*

█ The grandparents contend that the superior court erred in dismissing their appeal from the DHSS's decision to place their grandchildren for adoption with persons unknown to them. The superior court dismissed the appeal for lack of jurisdiction, finding that "[a]ppeal is taken and jurisdiction exists, if at all, under AS 47.10.-230(e)," [10] but that the DHSS has made an adoptive placement and "AS 47.10.230(f) [11] removes the appellate jurisdiction of this court when the Department ... makes a placement for adoptive purposes."

The grandparents appear to concede at this point that the placement of their grandchildren was for adoptive purposes, and, as such, AS 47.10.230(e) does not directly grant them a right to appeal the DHSS's determination to the superior court. They contend, however, that they have a right to an appeal of the DHSS's determination pursuant to the Indian Child Welfare Act, the Due Process Clause of the Fourteenth Amendment, and Appellate Rule 45.

Section 105 of the Indian Child Welfare Act grants the extended family, including grandparents, a right to preference in the adoptive placement of Indian and Native Alaskan Children.[12] The Ahngasuks con-

**7.** 25 U.S.C. § 1912(f) (Supp.1978) provides that the parental rights of an Indian may not be terminated absent

"a determination, supported by evidence *beyond a reasonable doubt*, ... that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child" (emphasis added).

**8.** 25 U.S.C. § 1923 (Supp.1978).

**9.** The provisions of the Act are not applicable on remand since the termination proceeding was initiated prior to the effective date of the Act. 25 U.S.C. § 1923 (Supp.1978).

**10.** AS 47.10.230(e) provides:

"(e) A child may not be placed in a foster home or in the care of an agency or institution providing care for children if a blood relative exists who requests custody of the

child. However, the department may retain custody of the child and provide for its placement in the same manner as for other children if it makes a determination, supported by clear and convincing evidence, that the custody of the child by the blood relative will result in physical or emotional damage. In making that determination, poverty, including inadequate or crowded housing, on the part of the blood relative, is not considered prima facie evidence that physical or emotional damage to the child will occur. This determination may be appealed to the superior court to hear the matter de novo."

**11.** AS 47.10.230(f) provides in pertinent part: "Nothing in this section or in (e) of this section applies to child placement for adoptive purposes."

**12.** 25 U.S.C. § 1915(a) (Supp.1978) provides: "(a) In any adoptive placement of an Indian child under State law, a preference shall

tend that they have been deprived of their statutory right by the DHSS's decision to place their grandchildren in a home unknown to them, and that the superior court is the proper forum in which to seek review of the decision and assert their right to preference.

■ Although jurisdiction exists in the superior court to adjudicate rights under the Act,[13] the operative provisions are expressly made inapplicable to any proceeding which was "initiated or completed" prior to May 8, 1979, the effective date of the Act.[14] Here the process of choosing an adoptive placement for V. A. and C. A. was initiated upon order of the superior court on April 11, 1979, prior to the Act's effective date. The Act is applicable, however, to "any subsequent proceedings in the same matter or subsequent proceedings affecting the custody or placement of the same child." 25 U.S.C. § 1923 (Supp.1978). The grandparents argue that the physical placement of the children on May 17, 1979, was a "subsequent proceeding in the same matter" to which the Act applies. We do not agree.

The legislative history of the Act indicates that the applicability provision was intended to provide for an orderly phasing in of the effect of the Act by making its provisions inapplicable to proceedings already initiated as of the effective date, but that Congress "intended that the provisions would apply to any *subsequent discrete* phase of the same matter or with respect to the same child initiated after enactment."[15] (emphasis added). In this case, the actual placement of the children was merely the completion of the entire administrative process of locating and selecting an adoptive placement which was initiated upon the termination of E. A.'s parental rights on April 11, 1979, and cannot be considered a subsequent proceeding or a discrete phase of the same matter. Since the adoptive placement of C. A. and V. A. was initiated by the DHSS prior to the effective date of May 9, 1979, the Act was not applicable and does not provide a basis for appeal in the superior court.

■ The Act will be applicable, however, to any future adoptive proceedings in this case. Under Alaska statutory law a hearing must be held in the superior court prior to entering a final decree of adoption.[16] Where this proceeding is initiated after an adoptive placement has already been made by the DHSS, we think it constitutes the type of "subsequent proceeding in the same matter" to which the Act was intended to apply. In order that the grandparents may effectively assert their statutory right to preference at such proceedings, we further hold that they have a due process right to notice and an opportunity to be

be given, in the absence of good cause to the contrary, to a placement with (1) a member of the child's extended family; (2) other members of the Indian child's tribe; or (3) other Indian families."

13. The Act grants concurrent jurisdiction in state and federal courts over child custody proceedings brought under its provision. *See* 25 U.S.C. §§ 1911, 1921 (Supp.1978); 28 U.S.C. § 1360(a) (Supp.1978). Where the Act applies, the state court has a duty to exercise its jurisdiction over actions brought thereunder, since to decline jurisdiction in such a case would violate the supremacy clause of the federal constitution. *Testa v. Katt*, 330 U.S. 386, 390–94, 67 S.Ct. 810, 812–14, 91 L.Ed. 967, 970–72 (1947); *Mondou v. New York, New Haven & Hartford Ry. Co.*, 223 U.S. 1, 57–58, 32 S.Ct. 169, 178, 56 L.Ed. 327, 349 (1911). *See also Jackson v. Lykes Steamship Co.*, 386 U.S. 731, 735, 87 S.Ct. 1419, 1422, 18 L.Ed.2d 488, 491 (1967).

14. 25 U.S.C. § 1923 (Supp.1978) provides:

"None of the provisions of this subchapter, except sections 1911(a), 1918, and 1919 of this title, shall affect a proceeding under State law for foster care placement, termination of parental rights, preadoptive placement, or adoptive placement which was initiated or completed prior to one hundred and eighty days after November 8, 1978, but shall apply to any subsequent proceeding in the same matter or subsequent proceedings affecting the custody or placement of the same child."

15. *See* H.R.Rep.No.1386, 95th Cong., 2d Sess. 25–26, *reprinted in* [1978] U.S.Cong. & Ad. News 7530, 7548.

16. *See* AS 20.15.100, AS 20.15.120.

**1216**

heard at any adoptive proceedings which may be conducted in the future. Since the grandparents will have an opportunity to challenge the DHSS's placement of their grandchildren at future proceedings, we need not address their remaining contention that they have been deprived of a due process and Rule 45 right to review of the DHSS's determination.

Thus, we affirm the superior court's dismissal of the grandparents' appeal for lack of jurisdiction. In the case of E. A., however, we remand to the superior court for a redetermination in accordance with section I of this opinion of whether her parental rights should be terminated.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

BOOCHEVER, J., not participating.

RABINOWITZ, Chief Justice, concurring in part, dissenting in part.

In order to assure that E. A.'s important rights to the care, custody, and control of her children are not permanently terminated absent strict compliance with applicable statutory requirements, the majority remands the matter to the superior court for the purpose of making a finding, based on clear and convincing evidence, that E. A.'s abandonment of her children is likely to continue. Although I agree that a remand is indicated, I disagree with the court's rejection of E. A.'s contention that she is entitled to a new adjudicatory hearing under the provisions of the Indian Child Welfare Act, 25 U.S.C.A. §§ 1901–63 (Supp. 1980).[1] For, in my view, the contemplated remand constitutes a subsequent proceeding affecting the custody or placement of the subject children.[2] Thus, I conclude that

upon remand the applicable standard of proof before E. A.'s parental rights can be terminated is that of "evidence beyond a reasonable doubt."

I concur in all other aspects of the court's decision.

---

1. 25 U.S.C.A. § 1912(f) (Supp.1980) provides:

    No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

2. 25 U.S.C.A. § 1923 (Supp.1980) provides:

None of the provisions of this subchapter, except sections 1911(a), 1918, and 1919 of this title, shall affect a proceeding under State law for foster care placement, termination of parental rights, preadoptive placement, or adoptive placement which was initiated or completed prior to one hundred and eighty days after November 8, 1978, but shall apply to any subsequent proceeding in the same matter or subsequent proceedings affecting the custody or placement of the same child.