**In the Matter of the ADOPTION OF A.F.M., a minor.**

No. S–8150.

Supreme Court of Alaska.

June 26, 1998.

Ernest M. Schlereth, Law Office of Ernest M. Schlereth, Anchorage, for appellant.

Elizabeth Kennedy, Law Office of Elizabeth Kennedy, Anchorage, for appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

*OPINION*

EASTAUGH, Justice.

## I. *INTRODUCTION*

A child ordinarily may not be adopted in Alaska unless the biological parent consents. But AS 25.23.050(a)(2)(B) waives consent if the parent has failed significantly and unjustifiably to support the child for "at least one year." Because Bruce Farley[1] paid no support for his daughter, A.F.M., between August 15, 1995 and August 16, 1996, the superior court allowed David Muntz to adopt A.F.M. without Farley's consent. We vacate the adoption decree because the superior court implicitly misinterpreted the statute

and miscalculated the period of nonsupport. In anticipation of further potential disputes, we conclude that a parent whose rights are terminated by adoption has no statutory visitation rights under AS 25.23.130(c).

## II. *FACTS AND PROCEEDINGS*

Laura Muntz and David Muntz were married in 1966 and divorced in February 1990. Laura Muntz and Bruce Farley formed a relationship in 1991. In 1992 Laura gave birth to A.F.M. in Spokane. Farley is A.F.M.'s biological father. Laura's relationship with Farley apparently ended before A.F.M.'s birth.

Farley brought a paternity action in Spokane County in early 1993 and was adjudicated A.F.M.'s father and ordered to pay $180 child support monthly. But by the summer of 1993, Farley could no longer support himself, and he began receiving unemployment benefits. The Washington child support agency reduced his monthly support obligation to $25; Farley states that the Washington unemployment office made the $25 payments directly to the Washington child support agency.

Farley received his last unemployment check in August 1995. Farley received monthly veteran's benefits of about $91; he claimed that was his only income between August 1995 and August 1996. On August 15, 1995, the unemployment office paid the Washington child support agency $25.65 for A.F.M. The child support division received nothing more until Farley paid $25 on August 16, 1996. Farley later testified that he also paid $100 in child support arrearages on August 16, 1996; that he paid $25 in September 1996 and October 1996; and that he paid $200 in arrearages in October 1996. He made no payments after October 1996.

Laura Muntz and David Muntz remarried in December 1994. They and A.F.M. began living in Alaska in March 1995. Farley continued to live in Washington. In February 1996 David Muntz petitioned for adoption of A.F.M. in the superior court in Anchorage. He contended that Farley's consent was unnecessary because conception had occurred

1. All names are pseudonyms.

as a result of sexual assault. Farley opposed the petition.

Laura Muntz died of cancer in August 1996.

On August 23, 1996, David Muntz filed a notice in the adoption proceeding stating that Farley had not paid the $25 monthly child support for more than one year. Although Muntz's original petition for adoption did not claim that any failure to pay child support would dispense with Farley's consent, Muntz's August 1996 notice informed Farley of the issue, and the parties briefed it in the superior court in November 1996.

In March 1997 the superior court conducted a hearing to determine whether Farley's consent was necessary. It found that Farley had made payments on August 15, 1995, and August 16, 1996. It reasoned that, despite Farley's unemployment, he could have paid the required support by reducing his cigarette consumption (estimated to be five to seven packs weekly, at $2 a pack). The court found that Farley had failed, without justifiable cause, to support A.F.M. for at least one year. It concluded that, under AS 25.23.050(a)(2)(B), Farley's consent to the adoption was not required.

The court then conducted a hearing on the child's best interests. It concluded that it was in the child's best interests to be adopted by Muntz. On April 22, 1997, the court entered an adoption decree.

Although Farley sought greater visitation rights, the court found that it was not in A.F.M.'s best interests to have contact with Farley, except for the limited post-adoption contact permitted by Muntz (such as sending Farley A.F.M.'s school photos and allowing Farley to send Christmas and birthday presents). Muntz also agreed to give Farley's address and telephone number to A.F.M. when she turns fourteen, and to help her contact him if she wishes to do so.

Farley appeals these rulings.

## III. *DISCUSSION*

### A. *Did Farley Fail to Provide Support for at Least One Year?*

■ Finding that Farley had "for a period of at least one year failed significantly without justifiable cause, including indigency, to provide for the care and support of the child," the superior court relied on AS 25.23.050(a)(2)(B)[2] to dispense with Farley's consent to the adoption.

Farley contends that the superior court erroneously applied that statute because it miscalculated Farley's period of nonsupport as one year and one day. First, he asserts that his August 15, 1995, payment "represented child support for the month of August 1995," and that his period of nonsupport was only eleven months. He maintains that the child support office considered his payment timely "so long as it's within that month." Second, he asserts that the August 15, 1995, payment was not posted until August 16, 1995. Therefore, only one year, not one year and one day, passed before he hand-delivered his payment on August 16, 1996.

■ When reviewing a decision terminating parental rights, we will not disturb the lower court's factual findings unless they are clearly erroneous—that is, unless they leave us with the definite and firm conviction that a mistake has been made. *See E.A. v. State*, 623 P.2d 1210, 1212 (Alaska 1981) (citing *In re S.D., Jr.*, 549 P.2d 1190, 1195 (Alaska 1976)). We apply our independent judgment when interpreting a statute. *See In re J.B.K.*, 865 P.2d 737, 739 n. 7 (Alaska 1993).

■ We have explained that courts should "strictly construe AS 25.23.050 in favor of the natural parent." *S.M.K. v. R.G.G.*, 702 P.2d 620, 623 (Alaska 1985). " '[A]doption consent provisions are designed to protect the natural rights of parents to custody, society, comfort, and services of the child.... [P]arents should not be deprived of the fundamental rights and duties inherent in the parent-child relationship except for 'grave and weighty reasons.' '" *D.L.J. v. W.D.R.*, 635 P.2d 834,

**2.** AS 25.23.050(a)(2)(B) provides:
Consent to adoption is not required of a parent of a child in the custody of another, if the parent for a period of at least one year has

failed significantly without justifiable cause, including but not limited to indigency, to provide for the care and support of the child as required by law or judicial decree.

837 (Alaska 1981) (quoting *In re Adoption of K.M.M.*, 611 P.2d 84, 87 (Alaska 1980)). Therefore, "where two interpretations of the statute are reasonably possible, that interpretation which is most protective of the rights of the natural parent is to be selected." *In re J.J.J.*, 718 P.2d 948, 959 (Alaska 1986) (Matthews, J., dissenting).

Farley was required to pay child support of $25 per month. Alaska Statute 25.23.050(a)(2)(B) does not specify how the year of nonsupport is to be calculated. We must strictly construe the statute in Farley's favor. *See S.M.K.*, 702 P.2d at 623. Because the parties have suggested two possible ways of measuring the year, we must select the way that is more protective of the biological parent's rights. *See In re J.J.J.*, 718 P.2d at 959.

Through garnishment of his unemployment check, Farley paid his August 1995 monthly payment on August 15, 1995; he paid his August 1996 monthly payment on August 16, 1996. Muntz argues that a year and a day separated Farley's payments. We are unwilling to interpret the statute to mean that because the August 1996 payment was as little as one day late, it is a nullity for purposes of determining whether Farley failed to provide support for A.F.M. for August 1996 and for purposes of deciding whether to dispense with the biological parent's consent. Farley therefore failed to provide for support of A.F.M. for eleven, not twelve, months. This failure does not satisfy the strict requirements of AS 25.23.050(a)(2)(B).

Because Farley did not fail to support A.F.M. "for a period of at least one year," we conclude that AS 25.23.050(a)(2)(B) does not dispense with Farley's consent to the adoption. Our resolution of this issue makes it unnecessary to address Farley's alternative argument based on the date when his August 1995 payment was posted.

### B. *Does Farley Have Statutory Post–Adoption Visitation Rights?*

■■■ Although our decision to vacate the adoption decree appears to render the post-adoption visitation issue moot, the issue of post-adoption visitation may again arise on remand. As an alternative reason for dispensing with Farley's consent to the adoption, Muntz argued in the superior court that conception occurred as a result of sexual assault. Because adoption without Farley's consent still appears at least possible, we will address the issue of post-adoption visitation.[3]

The superior court stated, "AS 25.23.130(c) was added to the statutes to allow the courts to fashion orders which would allow for mutually-agreed-upon visitation after an adoption, but it did not create a right to visitation in the biological family after an adoption." The court found that contact with Farley was not in A.F.M.'s best interests, but it permitted the very limited contact that Muntz suggested. The court also noted that "[t]he effect of the adoption, in the absence of [an] agreement, is to cut off all rights in the biological family as stated in the statutes."

Farley argues that the superior court interpreted AS 25.23.130(a) and .130(c) "as permitting it to fashion open adoption decrees ... *only* in situations where the parties have previously stipulated to or agreed to such an arrangement."[4] The superior court, he contends, "viewed itself as not having such statutory discretion to enter an open adoption decree" in this case because the parties had not made such an agreement.

We apply our independent judgment to questions involving statutory interpretation. *See J.B.K.*, 865 P.2d at 739 n. 7. We conclude

---

**3.** Even if a natural parent's parental rights are not terminated, guardianship may be appropriate under some circumstances, and legal and physical custody may be given to someone other than the natural parent. *See Turner v. Pannick*, 540 P.2d 1051, 1055 (Alaska 1975). If Muntz does not adopt A.F.M., the custody of A.F.M. may become an issue because her mother has died. *See J.W. v. R.J.*, 951 P.2d 1206 (Alaska 1998).

**4.** AS 25.23.130(c) provides, "Nothing in this chapter prohibits an adoption that allows visitation between the adopted person and that person's natural parents or other relatives." Subsection (c) was added in 1986 to overrule that portion of our decision in *In re W.E.G.*, 710 P.2d 410, 415 (Alaska 1985), which held that subsection .130(a) foreclosed biological relatives (presumably including natural parents) from visitation rights after an adoption.

that the superior court did not err in interpreting AS 25.23.130(c), and we agree that AS 25.23.130(c) does not give the natural parent a right to post-adoption visitation. The superior court did not state that it believed that it lacked the discretion to allow visitation by Farley. Indeed, it is apparent from the superior court's analysis of whether A.F.M.'s best interests would be served by visitation that it understood that it had the power to fashion an open adoption with visitation to the biological parent despite the parties' failure to agree to such an arrangement. This interpretation of the statute was correct. In exercising its discretion, the superior court determined that visitation with Farley was not in A.F.M.'s best interests.

Finally, Farley argues that, if the court did interpret AS 25.23.130(c) correctly, the statute as applied violates the due process and equal protection clauses of the Alaska and United States Constitutions. Farley argues that the statute discriminates against citizens "on the basis of whether they do or do not choose to contest the issue of whether their consent to an adoption is necessary." He asserts that there is no rational basis for such a classification. We need not reach this issue because the superior court's denial of visitation to Farley was not based on whether Muntz consented or the parties had agreed to visitation.

## IV. CONCLUSION

We REVERSE the superior court's determination that Farley's consent was not required and VACATE the adoption decree.