**In the Matter of the ADOPTION OF A.F.M.**

**B.F., Appellant,**

**v.**

**D.M., Appellee.**

**Nos. S–9308.**

Supreme Court of Alaska.

Jan. 5, 2001.

Ernest M. Schlereth, Anchorage, for Appellant.

Elizabeth Page Kennedy, Anchorage, for Appellee.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

BRYNER, Justice.

## I. INTRODUCTION

The superior court allowed David Muntz to adopt his wife's daughter, A.F.M., without the consent of A.F.M.'s biological father, Bruce Farley. In granting the adoption, the court relied on AS 25.23.180, which authorized it to dispense with Farley's consent if

A.F.M.'s conception resulted from a sexual assault. We affirm this ruling, concluding: (1) substantial evidence supports the finding that A.F.M.'s conception resulted from a sexual assault by Farley; (2) AS 25.23.180 did not require a conviction of sexual assault as a prerequisite to waiving Farley's consent; (3) terminating Farley's paternal rights in the adoption proceeding did not trigger the constitutional guarantees that attach to a criminal prosecution; and (4) collateral estoppel did not bar the court from deciding whether A.F.M. was conceived as a result of Farley's sexual assault, since that issue had not been properly raised or litigated before.

## II. *FACTS AND PROCEEDINGS*

The underlying facts are largely undisputed and can be summarized briefly.[1] Laura and David Muntz[2] married in 1966 and divorced in 1990. After divorcing, Laura became involved in a brief relationship with Bruce Farley and became pregnant. She gave birth to a daughter, A.F.M., in Washington in November 1992. In a 1993 paternity action, a Washington court found Farley to be A.F.M.'s father, ordered him to pay child support, and granted limited visitation.[3]

Meanwhile, Laura had reunited with David; she remarried him in December 1994 and moved to Alaska with A.F.M. in 1995. The following year David petitioned for adoption of A.F.M. in the superior court in Anchorage. In support of his petition, David contended that Farley's consent to the adoption was unnecessary for two reasons: because Farley had failed to pay child support for more than a year and because A.F.M.'s conception had resulted from a sexual assault by Farley. Relying on David's allegation of non-support, the superior court waived Far-

ley's consent and granted the adoption. Farley appealed. We reversed the superior court's decision, concluding that the court had miscalculated the period of Farley's non-support.[4]

On remand, David advanced his alternative ground for waiving Farley's consent to adoption: his claim that A.F.M.'s conception resulted from a sexual assault by Farley. In response, Farley claimed that David was collaterally estopped from raising this issue by the Washington court's express finding, during the prior paternity action, that Farley had not sexually assaulted Laura. The superior court rejected Farley's claim of estoppel, however, reasoning that the question of whether A.F.M. had been conceived as a result of sexual assault was not necessary to the Washington court's decision. After hearing Farley's live testimony and Laura's video-taped deposition,[5] the superior court found that A.F.M. was conceived by sexual assault; on that basis, the court terminated Farley's parental rights, waived his consent, and granted David's petition to adopt A.F.M.

Farley appeals.

## III. *DISCUSSION*

### A. *Standard of Review*

We will overturn a "trial court's resolution of child custody issues 'only if there has been an abuse of discretion or if the controlling findings of fact are clearly erroneous.'"[6] We review issues of statutory and constitutional interpretation de novo,[7] and likewise apply our independent judgment to determine if collateral estoppel applies to a particular set of facts.[8]

1. We covered the facts in greater detail in *In re Adoption of A.F.M.*, 960 P.2d 602, 603–04 (Alaska 1998).

2. We use the same pseudonyms here that we used in *In re Adoption of A.F.M.*, 960 P.2d at 602.

3. *See id.* at 603.

4. *See id.* at 603–04.

5. Laura died of cancer in August 1996, several months after the adoption proceeding was filed.

6. *Todd v. Todd*, 989 P.2d 141, 142–43 (Alaska 1999) (quoting *J.W. v. R.J.*, 951 P.2d 1206, 1209 (Alaska 1998)).

7. *See Turney v. State*, 936 P.2d 533, 538 (Alaska 1997).

8. *See Wilson v. Municipality of Anchorage*, 977 P.2d 713, 726 (Alaska 1999).

B. *The Superior Court Did Not Err as a Matter of Fact or Law in Dispensing with Farley's Consent to Adoption.*

 Under Alaska law, a parent must ordinarily consent to adoption.[9] But consent is not required if the parent's relationship with the child has been terminated by court order in an adoption or child in need of aid proceeding.[10] Alaska Statute 25.23.180(c)(3) expressly authorizes a court to terminate a biological father's parental rights in an adoption proceeding if it finds that his child's conception resulted from an act of sexual assault and that termination is in the child's best interests:

(c) The relationship of parent and child may be terminated by a court order issued in connection with a[n] [adoption] proceeding under this chapter or a [child in need of aid] proceeding under AS 47.10 on the grounds

. . . .

(3) that the parent committed an act constituting sexual assault or sexual abuse of a minor under the laws of this state or a comparable offense under the laws of the state where the act occurred that resulted in conception of the child and that termination of the parental rights of the biological parent is in the best interests of the child.

A finding under this provision must be made by clear and convincing evidence [11] and, when made, allows the court to dispense with the father's consent to adoption.[12]

In the present case, Farley contends that the superior court erred as a matter of fact and law in relying on this provision as a basis for allowing A.F.M. to be adopted without his consent.

1. *The court did not err as a matter of fact in finding sufficient evidence to establish that A.F.M.'s conception resulted from a sexual assault by Farley.*

 Farley contends that there was insufficient evidence for the court to conclude that A.F.M. was conceived as a result of a sexual assault by Farley. He insists that evidence of sexual assault was "shaky" and that, even if a sexual assault occurred, there was insufficient basis to find that it resulted in A.F.M.'s conception.

 But these arguments are unpersuasive. When we review a trial court's factual findings, we consider only whether the findings were clearly erroneous.[13] Moreover, we give particular deference to those findings when, as here, "most of the trial evidence consists of oral testimony";[14] for we recognize that in such cases, "[i]t is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence." [15]

Because A.F.M. was conceived in the State of Washington, AS 25.23 .180(c)(3) required the superior court to determine whether an act of sexual assault occurred under Washington law—"the state where the act occurred." [16] Under Washington law, rape in

**9.** *See* AS 25.23.040(a)(1) and (2).

**10.** *See* AS 25.23.050(a)(5).

**11.** Adoption Rule 11(f); *cf. D.L.J. v. W.D.R.,* 635 P.2d 834, 838 (Alaska 1981) (applying clear and convincing standard to finding that natural parent's consent to adoption proceeding was not required because the parent failed to communicate with or support child); *In re Adoption of K.S.,* 543 P.2d 1191, 1195 (Alaska 1975) (upholding trial court's application of clear and convincing standard of proof to finding that natural mother was unfit and that her consent to adoption was not required).

**12.** AS 25.23.180(d)(1) provides:
(d) For the purpose of an adoption proceeding under this chapter, a decree issued by a court of competent jurisdiction in this or another state terminating all rights of a parent with reference to a child or the relationship of parent and child dispenses with the required
(1) consent by that parent to an adoption of that child[.]

**13.** *See Todd v. Todd,* 989 P.2d 141, 142–43 (Alaska 1999).

**14.** *Silvers v. Silvers,* 999 P.2d 786, 792–93 (Alaska 2000) (citing *Martens v. Metzgar,* 591 P.2d 541 544 (Alaska 1979)).

**15.** *Knutson v. Knutson,* 973 P.2d 596, 599–600 (Alaska 1999).

**16.** AS 25.23.180(c)(3).

the third degree occurs when a person engages in sexual intercourse with another person who is not a spouse and who has clearly expressed the lack of consent.[17] Here, the evidence supports a finding that A.F.M.'s conception resulted from Farley's commission of third-degree rape.

The evidence presented to the superior court on this issue included a transcript of testimony in the January 1994 Washington custody proceedings, a December 1995 affidavit that Laura submitted in support of David's adoption petition, and testimony that she gave in a May 1996 video deposition. Laura's Washington testimony described an on-and-off again relationship with Farley that was punctuated by bouts of violence, followed by Farley crying and Laura forgiving him. Laura testified that she had not wanted to get pregnant but that Farley had repeatedly forced her to have sex with him after she tried to break off their relationship in January 1992. According to Laura, Farley would "back me into a corner or back me on down to the bed and, if he wanted sex, and hold me down." Eventually, a month before A.F.M.'s birth, Laura obtained an anti-harassment order against Farley.

Laura's December 1995 affidavit described the act of rape that allegedly resulted in her daughter's conception:

5. In February of 1992, Mr. [Farley] came to my door, and when I opened it, he pushed open the door. He cornered me and took off my clothes, and then pushed me into the bedroom.

6. I kept insisting to him that I did not want to have sex with him but he persisted, forcing me. I had told Mr. [Farley] several times that I had a serious medical condition which might result in my death or the death of a child if I became pregnant. When I had my last child I had

internal tearing which required reconstructive surgery. Mr. [Farley] used a condom during his forcible sex with me.

7. After that night I told him again I did not want to see Mr. [Farley]. I did not report him to the police because I did not want to get him in trouble.

8. I found out I was pregnant, and confronted Mr. [Farley], who told me that he had poked holes in the condom he used in order to get me pregnant and force me to marry him.

9. When I was pregnant, I became very ill. I was unable to get to the courthouse, but finally, in the eighth month I got a restraining order preventing Mr. [Farley] from contacting me.

Laura described this assault again in her 1996 deposition,[18] but said that Farley had not used a condom. Laura also testified in her deposition that she learned of her pregnancy "probably about a month and a half later." [19]

Farley provided a very different version of events. He denied that he had ever sexually assaulted Laura and insisted that in January 1992 Laura was "willing and wanting to get pregnant."

After considering the evidence, the superior court accepted Laura's version of events, finding that Farley had sexually assaulted Laura and that A.F.M.'s conception had resulted from his commission of this offense:

I find that based on the testimony of the late mother of this child, I find her believable, credible. And I find the testimony of Mr. [Farley] to be incredible and I find him to not be telling the truth on these issues.

Farley vigorously disputes this finding. Pointing to various discrepancies in Laura's account of their relationship, he insists that

17. RCW 9A.44.060(1)(a) provides:
 (1) A person is guilty of rape in the third degree when, under circumstances not constituting rape in the first or second degrees, such person engages in sexual intercourse with another person, not married to the perpetrator:
 (a) Where the victim did not consent as defined in RCW 9A.44.010(7), to sexual intercourse with the perpetrator and such lack of consent was clearly expressed by the victim's words or conduct[.]

18. Laura was deposed in May 1996; she died that August.

19. At the deposition, Laura further testified regarding charges that Farley had sexually assaulted young girls in his family. She said she had contacted Child Protection Services because she believed Farley had molested A.F.M.

her version of events "should have left the trier of fact with a reasonable doubt as to whether the particular incident resulting in conception, was indeed a rape." But Farley fails to recognize that his own testimony gave the trial court ample basis for disbelief. While insisting that his relations with Laura had always been consensual and that she had wanted to become pregnant, Farley acknowledged that he had used condoms when having sex with Laura and had "pinched" one of those condoms. He conceded that Laura had not agreed to marry him. He admitted knowing that, even before becoming pregnant, Laura was trying to reunite with David. And he offered an implausible account of his separation from Laura: according to Farley, after Laura got pregnant "she just stopped seeing me. She just said it's done, it's over with and went running back to [David Muntz]."

Farley also emphasizes that Laura acknowledged having consensual relations with him on a number of occasions. Pointing to the conclusory and uncorroborated nature of Laura's assertion that she became pregnant as a result of an incident of sexual assault, rather than an incident involving consensual sex, he criticizes her for failing to explain "*how* she knew this." But in advancing this argument, Farley overlooks that he failed to ask Laura for an explanation, that Laura's testimony on this point was unequivocal, and that it stands uncontradicted except by his own conflicting assertions.

Here, our review of the record convinces us that the superior court was not clearly erroneous in finding that A.F.M.'s conception resulted from a sexual assault by Farley.

2. *The court correctly determined as a matter of law that AS 25.23.180(c)(3) does not require a prior sexual assault conviction.*

Farley argues that even if the evidence supported a factual finding that A.F.M.'s conception resulted from a sexual assault, the superior court erred as a matter of law by dispensing with his consent on this basis. Specifically, Farley contends that AS 25.23.180(c)(3) must be construed to dispense with parental consent to adoption based on sexual assault only when a parent has been formally convicted of the offense.

This contention cuts against the grain of AS 25.23.180(c)(3)'s plain language, which does not require a conviction for sexual assault. The statute permits the court to terminate parental rights and waive consent to adoption if the parent "*committed an act* constituting sexual assault or sexual abuse of a minor under the laws of this state or a comparable offense under the laws of the state where the act occurred that resulted in conception of the child." [20]

Alaska does not follow the plain meaning rule of statutory interpretation, applying, instead, a sliding scale approach that allows us to depart even from plainly worded statutory language if its history convincingly shows a legislative intent to adopt a different meaning.[21] But the legislative history of AS 25.23.180(c)(3) establishes that the legislature intended to adopt the statute's plain meaning. The statute was enacted in 1987 in response to this court's decision in *S.J. v. L.T.*[22] S.J. began sexually abusing his stepdaughter when she was eight years old, fathered a child by her when she was fifteen, and was convicted of sexually abusing her for an incident that occurred two years later.[23] In a custody action between S.J. and his stepdaughter, the superior court terminated S.J.'s parental rights, concluding that the termination was warranted on public policy grounds because S.J. had "father[ed] a child

20. (Emphasis added.) Under Washington's criminal code a person commits rape in the second degree by engaging in sexual intercourse by forcible compulsion. *See* RCW 9A.44.050(1)(a). A person commits rape in the third degree by engaging in sexual intercourse with a non-spouse without consent, where that lack of consent is clearly expressed by words or conduct. *See* RCW 9A.44.060(1)(a).

21. *See Romann v. State, Dep't of Transp. & Pub. Facilities*, 991 P.2d 186, 190–91 (Alaska 1999).

22. 727 P.2d 789 (Alaska 1986).

23. *See id.* at 791–92.

by means of a criminal relationship." [24]

In reversing this termination order, we ruled that "[i]nvoluntary termination of parental rights may not be accomplished absent some statutorily mandated procedure." [25] But we expressly invited the legislature to "consider issues such as those raised in this case in order to provide courts with necessary guidance in resolving sensitive questions." [26]

The legislature answered this invitation the following year by enacting the current version AS 25.23.180(c)(3).[27] Since the legislature acted specifically to cover the situation of S.J., whose sexual assault conviction was not for the assault that resulted in the birth of his child,[28] it seems obvious that the legislature did not intend the provision to require a formal conviction for sexual assault as a prerequisite to a finding of conception by sexual assault.[29]

Despite this apparent unity of plain meaning and legislative intent, Farley maintains that AS 25.23.180(c)(3) would be unconstitutional if it permitted parental rights to be terminated based on a finding of sexual assault in the absence of a formal conviction. Emphasizing that "statutes should be construed where possible to avoid unconstitutionality," [30] he urges us to avoid an unconstitutional result by interpreting the statute to require a criminal conviction. As we explain below in Part III.C., however, Farley's constitutional argument lacks merit. Accordingly, it provides no occasion to alter AS 25.23.180's plain meaning. Given the plain meaning of the statute and its legislative history, we conclude that the superior court properly interpreted AS 25.23.180(c)(3) as not requiring a prior conviction.

## C. Alaska Statute 25.23.180 Is Constitutional.

Farley next argues that AS 25.23.180 violates the due process and equal protection clauses of the state and federal constitutions.[31] Relying on *Baker v. City of Fairbanks*, where we held that criminal prosecutions "include offenses which, even if incarceration is not a possible punishment, connote criminal conduct in the traditional sense of the term," [32] Farley reasons that AS 25.23.180 amounts to a criminal provision. He emphasizes that the statute "requires the trial court to render a judgment against the non-custodial birth parent ... that that parent is guilty of a heinous criminal act, and prescribes a punishment far greater than any prison term; namely the loss of one's child." Farley thus proposes that "[t]he facts of this case call for the same constitutional protection[s]" that apply in criminal proceedings, namely, the right to a jury trial and the requirement of proof beyond a reasonable doubt.

But this reasoning is faulty for several reasons. Because adoption hearings are not

24. *Id.* at 792.

25. *Id.* at 795.

26. *Id.* at 795 n. 8.

27. House committee testimony indicates that the bill was "written to address one specific case" "involving people in Fairbanks" "in which there is wide spread agreement about the answer." Minutes of House Health, Education and Social Services Standing Committee hearing on Senate Bill 30 (May 17, 1987).

28. *See S.J.*, 727 P.2d at 791–92, 795.

29. This conclusion is bolstered by the testimony of Senator Paul Fischer, the bill's prime sponsor, who, when asked if the bill "relates only to termination of parental rights for persons who have been convicted and incarcerated," responded: "that was not the intent." Minutes of Senate Health, Education & Social Services Committee Hearing on Senate Bill 30 (March 25, 1987).

30. *State v. Guest*, 583 P.2d 836, 839 (Alaska 1978) (citations omitted).

31. *See* U.S. Const. amend. V (due process); Alaska Const. art. I, § 7 (due process); U.S. Const. Amend. XIV, § I (due process and equal protection); and Alaska Const. art. I, § 1 (equal protection). Farley also cites state and federal constitutional provisions guaranteeing a speedy and public trial by an impartial jury in all criminal prosecutions. *See* U.S. Const. amend. VI; Alaska Const. art. I, § 11.

32. *Baker v. City of Fairbanks*, 471 P.2d 386, 402 (Alaska 1970); *see also R.L.R. v. State*, 487 P.2d 27, 33 (Alaska 1971) (extending *Baker* to a juvenile delinquency case involving sale of LSD because of "the moral opprobrium attached" to the offense).

proceedings brought by the state to punish offenders for acts of misconduct, an adoption order that terminates parental rights under AS 25.23.180 does not, realistically speaking, amount to an "offense"; neither does it "connote criminal conduct in the traditional sense of the term." [33] And since adoption proceedings are confidential, a father whose parental rights are terminated faces neither the "moral opprobrium" [34] that normally accompanies a sexual assault conviction nor the "collateral consequences of a formally 'criminal' conviction—i.e., the stigma of being labeled a 'criminal.' " [35]

As we recently observed, "punishment for past misconduct" is the "implicit *sine qua non* of a 'criminal prosecution.' " [36] Yet even when questions of conception by sexual assault arise under AS 25.23.180(c)(3), punitive purpose plays no role in adoption proceedings. The purpose of A.F.M.'s adoption hearing was not to punish Farley for his past misconduct; it was to determine A.F.M.'s future custody in accordance with her best interests. Thus, in the analogous procedural setting of an appeal arising from child-in-need-of-aid adjudication, we have refused to characterize termination of parental rights as a criminal proceeding, relying on the termination's non-punitive purpose.[37] Despite the state's participation as the prosecuting party in such cases, we have reasoned that a termination order is non-criminal because "the parent is neither charged with criminal behavior nor subject to incarceration as a direct consequence of the proceeding." [38]

Farley attempts to distinguish his case from a termination occurring in a CINA proceeding. He argues that under AS 25.23.180(c)(3), "the birth father *is* charged with very serious criminal behavior," that "the court is called upon to ... [make] a determination that he is guilty," and that "[t]he direct result of such a judgment is the loss of the cherished constitutional right to bear and raise children." This argument is unpersuasive.

■ The "right to direct the upbringing of one's child" is undeniably "one of the most basic of all civil liberties." [39] As we noted in extending the right to court-appointed counsel to a biological parent who faced termination of parental rights in an adoption proceeding, "loss of custody is often recognized as 'punishment more severe than many criminal sanctions.' " [40] But neither the fundamental nature of the rights at stake nor the criminal nature of the conduct that place those rights in jeopardy alters an adoption proceeding's essentially non-punitive purpose. And because the proceeding's basic purpose remains unchanged, a claim of conception by sexual assault does not convert the adoption into a criminal trial.

Admittedly, an order terminating parental rights in such a case is, in Farley's words, a "direct result" of the father's sexual misconduct. Yet the termination is not an automatic consequence of the misconduct, and, more importantly, the father's rights are not the only rights at issue. By asserting his paren-

**33.** *Baker*, 471 P.2d at 402.

**34.** *R.L.R.*, 487 P.2d at 33.

**35.** *State, Dep't of Revenue, Child Support Enforcement Div. v. Beans*, 965 P.2d 725, 730 (Alaska 1998).

**36.** *Id.* at 730 n. 8.

**37.** *See In re C.L.T.*, 597 P.2d 518, 525 (Alaska 1979) (approving use of clear and convincing standard in proceedings to terminate parental rights).

**38.** *Id.; see also A.A. v. State, Dep't of Family and Youth Servs. .*, 982 P.2d 256, 260 (Alaska 1999) (affirming termination of parental rights after father's murder conviction was overturned be-cause termination was not based on conviction but on extensive history of assaultive behavior); *cf. Nelson v. Jones*, 781 P.2d 964, 969–70 (Alaska 1989) (affirming decree of divorce establishing conditional supervised visitation based on clear and convincing evidence that father had sexually abused daughter). We note that other courts have reached similar conclusions in adoption proceedings. *See, e.g., In re Shane T.*, 544 A.2d 1295, 1296–98 (Me.1988) (rejecting argument that parent whose rights would be terminated was entitled to a jury trial); *In re Colon*, 144 Mich.App. 805, 377 N.W.2d 321, 327–28 (1985).

**39.** *Flores v. Flores*, 598 P.2d 893, 895 (Alaska 1979); *see also Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000).

**40.** *In re K.L.J.*, 813 P.2d 276, 283 (Alaska 1991).

tal right to resist A.F.M.'s adoption, Farley necessarily implicated the equally vital rights of A.F.M. and her mother.[41] Alaska Statute 25.23.180(c)(3) implicitly recognizes the need to balance these competing rights by authorizing termination only upon a finding that sexual assault "resulted in conception of the child *and that termination of the parental rights of the biological parent is in the best interests of the child.*" [42]

Thus, while Farley's sexual assault of Laura was unquestionably important, it by no means was the only, or even the determining, factor in the court's decision to terminate his rights. Because AS 25.23.180(c)(3) required the court to evaluate Farley's sexual assault in relation to A.F.M.'s best interests, the statute gave his illegal actions significance not as past conduct that deserved punitive sanction, but as a present circumstance that promised lasting damage to A.F.M.'s ability to form a healthy bond with Farley. In so doing, the statute simply recognized the practical reality that "[i]t is not the brute biological fact of parentage, but the existence of an actual or potential relationship that society recognizes as worthy of respect and protection, that activates the constitutional claim." [43]

 In short, because proceedings under AS 25.23.180(c)(3) serve important non-punitive ends, we uphold the statute's constitutionality as a non-criminal measure.[44]

### D. Collateral Estoppel Did Not Bar Reliance on AS 25.23.180.

 Farley's last contention is that the doctrine of collateral estoppel barred the court from considering whether A.F.M. was conceived by rape. This argument calls for a brief explanation.

When Farley filed the Washington action to establish that he had fathered A.F.M., Laura resisted his request for visitation and custody by contending that Farley had a manipulative and abusive personality, and that he had selfishly duped her into becoming pregnant. Laura further asserted that visitation would be detrimental to A.F.M. The record in this case does not demonstrate that Laura's pleadings in Washington claimed that she had been sexually assaulted by Farley or that she asked the court to deny visitation for this reason. The Washington transcript contained in the record makes clear that Laura did not report any incidents of sexual assault to the guardian ad litem.

The first mention of sexual assault in the Washington proceedings evidently occurred when Laura testified before a court commissioner at the custody hearing. During her

---

41. *See, e.g.*, Minutes of House Health, Education and Social Services Standing Committee hearing on Senate Bill 30 (May 17, 1987) (testimony, without elaboration, that statute serves interests of mother and child); *see also Mullis v. Kinder*, 568 N.E.2d 1087, 1091 (Ind.App.1991) (noting that statute waiving father's consent to adoption where the child was conceived as a result of rape was enacted to protect the victims of sex crimes who bear children); *Christian Child Placement Serv. v. Vestal*, 125 N.M. 426, 962 P.2d 1261, 1266 (N.M.App.1998) (recognizing that statute waiving father's consent to adoption where the child was conceived as a result of rape or incest is rationally related to the state's interest in protecting children and preventing their exploitation); *In re Termination of Parental Rights to SueAnn A.M.*, 176 Wis.2d 673, 500 N.W.2d 649, 653 (1993) (noting that purpose of statute denying father of child conceived as a result of rape standing to contest termination of parental rights was to "relieve sexual assault victims from having to face their assailants at termination proceedings," protect victims, and facilitate adoptions).

42. AS 25.23.180(c)(3) (emphasis added).

43. *Pena v. Mattox*, 84 F.3d 894, 899 (7th Cir. 1996).

44. Farley also cites the constitutional privilege against self-incrimination, U.S. Const., amend. V, Alaska Const. art. I, § 9, and suggests that AS 25.23.180 violates this right by exposing him to future incarceration "because the evidence elicited and his own testimony may be used as the basis for the later institution of a criminal prosecution against him." But on its face, AS 25.23.180(c)(3) did not prevent Farley from invoking the privilege or compel him to testify. Nor do the circumstances of Farley's case suggest an actual danger of compulsion. *Cf. McCracken v. Corey*, 612 P.2d 990, 996 (Alaska 1980); *In re P.N.*, 533 P.2d 13, 18–20 (Alaska 1975); *In re Jessica B.*, 207 Cal.App.3d 504, 254 Cal.Rptr. 883, 893 (1989). The privilege against self-incrimination is normally lost if it is not asserted. *See Williams v. State*, 928 P.2d 600, 605 (Alaska App.1996). Farley simply chose not to assert this right.

testimony, in describing Farley's manipulative behavior, Laura disclosed that at times he had physically coerced her into having sexual relations:

> I felt threatened. . . . [W]hat he would do, instead of hitting, he's so big, that he would prevent me from moving. He would put his body in front of mine and back me into a corner or back me on down to the bed and, if he wanted sex, and hold me down.

It was Farley's attorney who, while cross-examining Laura, first labeled this allegation "rape":

> To be perfectly honest, I'm stunned hearing you say that Mr. [Farley] was very, very violent, very threatening, he intimidated you, he raped you by holding you down, pushing you down. When did all this start?

Laura testified that she and Farley had an on-and-off again relationship: "When he forced me it was rape. When I consented I don't feel it was rape."

In closing argument to the Washington court, Laura's attorney never mentioned rape. Neither did Farley's attorney, who argued that "conception was not the issue in [the Washington] case." Nevertheless, in addressing Laura's request to prohibit all contact between Farley and A.F.M., the court commissioner addressed the issue of rape, commenting, "We don't have a rape here. You know, we really don't. We might have a different situation altogether if we did." Although the commissioner found Farley's manipulative conduct deplorable and selfish, the commissioner declined to bar Farley from seeing his daughter altogether.

When David later raised the issue of A.F.M.'s conception by sexual assault in the Alaska adoption proceeding, Farley responded by moving for summary judgment on the ground of collateral estoppel, asserting that the issue had been fully litigated in Washington and was decided in Farley's favor. The superior court rejected this assertion, describing the Washington court's references to the absence of rape as "musings." The superior court further concluded that the question of A.F.M.'s conception by sexual assault "was not litigated and judgment did not issue on the question" in the Washington case. Accordingly, the court denied Farley's summary judgment motion.

We agree that Farley's reliance on collateral estoppel must fail because the question of sexual assault was not actually litigated in the Washington proceeding. Restatement (Second) of Judgments § 27 requires an issue to be "actually litigated" before a ruling on it becomes conclusive in subsequent actions:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.[45]

Our cases have adopted this Restatement standard: "The doctrine of collateral estoppel 'bars relitigation, even in an action on a different claim, of all issues of fact or law that were actually litigated and necessarily decided in [a] prior proceeding.' "[46] And in applying the standard, we have said that an issue is "actually litigated" when it "is properly raised by the pleadings or otherwise, is submitted for determination, and is determined."[47]

---

**45.** Restatement (Second) of Judgments § 27 (1982).

**46.** *Wilson v. Municipality of Anchorage,* 977 P.2d 713, 726 (Alaska 1999) (quoting *Campion v. State, Dep't of Community & Reg'l Affairs,* 876 P.2d 1096, 1098 (Alaska 1994)). We ordinarily recognize that four factors must be met for the doctrine to apply:

> (1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action; (2) the issue precluded from relitigation is identical to the issue

decided in the first action; (3) the issue was resolved in the first action by a final judgment on the merits; and (4) the determination of the issue was essential to the final judgment.

*Wilson,* 977 P.2d at 726 (citing *Jackinsky v. Jackinsky,* 894 P.2d 650, 654 (Alaska 1995)). Factor (3) encompasses the requirement that an issue actually be litigated.

**47.** *Bignell v. Wise Mechanical Contractors,* 720 P.2d 490, 494 (Alaska 1986) (citing Restatement (Second) of Judgments § 27); *see also Jackinsky,* 894 P.2d at 655 (citing Restatement (Second) of Judgments § 27 cmt. d).

As is apparent from our summary of the Washington proceedings, the issue of sexual assault was not "actually litigated" in this sense. While the issue undeniably cropped up in Laura's Washington testimony and was decided by the commissioner, the parties never "properly raised" it, "by the pleadings or otherwise"; nor did they "submit[ ][it] for determination." Because the issue was not "actually litigated," the Washington court's finding on sexual assault did not preclude David from litigating the issue in the Alaska adoption proceeding.

## IV. CONCLUSION

The superior court properly construed and applied AS 25.23.180(c)(3); the evidence supports the court's findings under this statute; the statute is not unconstitutional; and the court's findings are not barred by collateral estoppel. For these reasons, we AFFIRM the decree of adoption.